CASE 101—INDICTMENT FOR HOMICIDE—NOVEMBER 25.

# Toliver v. Commonwealth.

APPEAL FROM HARLAN CIRCUIT COURT.

1. CRIMINAL LAW—HOMICIDE—INSTRUCTIONS—SELF-DEFENSE.—Where the evidence for the Commonwealth tended to show that the defendant shot the deceased in the back and there was no fact or circumstance proved tending to show that the defendant fired the shot in self-defense, it was not error to refuse an instruction on the subject of self-defense.

2. SAME—EVIDENCE—DYING DECLARATIONS.—A statement by the deceased in this language: "Pap, I am killed this time; I want you to get George Bailey and write my affidavit, but I

.Toliver  v.  Commonwealth.

am afraid you can not get him in time," is sufficient to show
the deceased's consciousness of impending death. ,

3. SAME—CONTINUANCE—ADMISSION BY COMMONWEALTH'S ATTORNEY
UNDER SECTION 189 OF THE CRIMINAL CODE.—An admission made
at the indictment term by the Commonwealth's Attorney that
an affidavit for a continuance might be read "as the true state-
ments of the witnesses in said affidavit set out," is not suffi-
cient to avoid a continuance under section 189 of the Criminal
Code as amended by the act of May 15, 1896, but where it de-
velops on the trial that the evidence of the absent witnesses
would have been either incompetent or irrelevant the error of
the court in refusing the continuance is not prejudicial.

W. F. HALL AND E. E. HOGG FOR APPELLANT.

1. The trial court erred to the prejudice of the appellant when it
refused him a continuance.
2. The trial court erred in admitting the statements claimed to
be dying declarations.
3. The court erred in instructing the jury
     Citations:  Greenleaf on Evidence, vol. 1, sec. 158; Common-
wealth v. Matthews, 89 Ky., 287; 11 Ky. Law Rep., 505; Peoples
v. Commonwealth, 87 Ky., 487; Luker v. Commonwealth, 9 Ky.
Law Rep., 385; Vaughan v. Commonwealth, 86 Ky., 431; 9
Ky. L. R., 385; Lieber v. Commonwealth, 9 Bush, 11; Collins
v. Commonwealth, 12 Bush, 271.

W. S. TAYLOR, ATTORNEY-GENERAL, AND M. H. THATCHER FOR
APPELLEE.

1. The statements of absent witnesses set out in the affidavit for a
continuance were either admitted, or, where they were rejected,
were incompetent.  Crim. Code, sec. 189.
2. The dying declarations were competent.  Norfleet v. Common-
wealth, 17 Ky. Law Rep., 1137.
3. The instructions covered the issues as made.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The jury found the defendant guilty of the murder of
M. Gross, and fixed his punishment at confinement in the
penitentiary for life.' He seeks a reversal because—First,
the court overruled his motion for a continuance; second,
in admitting as evidence statements of the deceased as his

dying declaration; third, error in instructing the jury. We will consider the questions raised in their reverse order.

He denied that he did the shooting which resulted in the death of Gross, and so testified. The testimony for the Commonwealth tends to show that whilst the deceased was working in his cornfield the accused shot him in the back. There is no pretense or claim that the shooting was done in self-defense; neither was the slightest evidence offered, or a circumstance proven, to indicate that such was the case. The court did not give, and should not have given, an instruction on the law of self-defense. It instructed the jury on the subjects of murder and reasonable doubt, which were all the instructions that should have been given.

To prove that the deceased was laboring under a sense of impending dissolution when he made the statements claimed to be a dying declaration, John Gross, his father, was introduced as a witness. He testified that: "When I first went to him, he said: 'Pap, I am killed this time. I want you to get George Bailey and write my affidavit, but I am afraid you can not get him here in time.'" He lived about five hours after he was shot. It is contended that the evidence does not sufficiently show that the deceased was laboring under a sense of impending dissolution, and, therefore, the statements were inadmissible as a dying declaration. He said that he was "killed," and wanted to make an affidavit, but was afraid that the amanuensis could not be procured in time to take his statement before he died. We think this testimony is sufficient to show that he had no hope of recovery, and felt that he must certainly die soon.

Isom Sullivan, who was present at the time of the fatal

shooting, testified that the accused did it.   The defendant
filed an affidavit and moved the court for a continuance.
It was stated that Jane Gross would testify that Sullivan
came to the house where she was, apparently tired and ex-
cited, and said that some one had shot and killed Gross;
that he saw some man run from where the shot was fired,
some distance away, but did not know him, and had no
idea or knowledge who it was that shot the deceased.   It
was stated in the affidavit that Barbery Gross would
prove the same facts.   It is also stated in the affidavit that
Adron Brown would prove that on a certain occasion, de-
scribed in the affidavit, the accused did not state to James
Brock that he had killed Gross, but, on the contrary,
stated that he knew nothing about who had shot him.
This testimony was manifestly desired for the purpose of
contradicting Isom Sullivan and James Brock in the event
they were introduced by the Commonwealth and testified
contrary to the statements of the affidavit.   There are
other witnesses referred to in the affidavit, to whom we
will refer later.   The Commonwealth Attorney agreed
that such parts of the affidavit as were competent could
be read to the jury "as the true statements of the wit-
nesses in said affidavit set out."   Thereupon the court
overruled defendant's motion for a continuance.   The
affidavit was filed and the trial took place at the term
during which the indictment was found.   It is contended
that the Commonwealth Attorney did not make such agree-
ment as section 189 of the Criminal Code of Practice re-
quired he should have made, to authorize the court to
overrule the motion for a new trial.   On the trial of the
case the Commonwealth introduced Isom Sullivan, who ad-
mitted that he had told the Gross women and Matt Gross
that he did not know, at the time mentioned in the affi-

davit, who killed the deceased.  He gave as his reason for
so stating that he was afraid at that time to give his
knowledge as to who had done it.  This witness had ad-
mitted all to be true.  The fact which it was proposed to
prove by the Gross women was rendered incompetent, be-
cause it would not have contradicted Sullivan, as he ad-
mitted that he had made the statement to them which it
was claimed they would prove.  James Brock was intro-
duced as a witness for the Commonwealth, but did not
make any statements which the accused supposed he
would make, and to impeach which he desired the testi-
mony of Adron Brown.  The testimony of Brown was to
be used in rebuttal, and the occasion did not arise for its
use.  William Toliver, who was another witness named
in the affidavit as an absent witness, whose testimony the
accused desired, appeared in court, and was introduced as
a witness for the accused.  The motion for a continuance
was made at the same term at which the indictment was
found; and, if the testimony of the absent witness was
material and relevant, the court should have granted it,
*unless the attorney for the Commonwealth admitted upon
the trial that the facts are true."*    That means that the
Commonwealth Attorney can not introduce any evidence
on the trial of the case to contradict the statements con-
tained in the affidavit.  He was not required to admit
that Sullivan did not see the person who did the shooting,
but was simply prevented from proving by Sullivan or
any one else that Sullivan did not tell the Gross women
that he did not know the party who did the shooting.
Sullivan proved that he made the statement which the ac-
cused claimed that he had made with reference to the mat-
ter, and Brock never testified to any of the facts to which
the accused supposed he would testify.  Therefore the

Commonwealth Attorney followed strictly the require-
ments of section 189, Criminal Code of Practice, although
the agreement.which he made was not in the language
which the section requires.

The evidence is abundant to establish the guilt of the
accused, and, under proper instructions of the court, the
jury found him guilty. We do not think that his sub-
stantial rights have been prejudiced by any error occur-
ring at the trial. Therefore the judgment is affirmed.