### Reed v. Commonwealth.

(Decided November 23, 1910.)

### Appeal from Whitley Circuit Court.

Criminal Law—Homicide—Instructions to the jury—Evidence Considered.—On the trial of this prosecution against Lee Reed for maliciously shooting and killing James Cain, evidence was introduced of a previous difficulty between Reed and Cain (in which one McCullom participated) and in which it was shown that Reed and McCullom were the aggressors and brought on the difficulty by first assaulting Cain, and the evidence further showed that that difficulty had been abandoned and was at an end, and that there

was no danger at the hands of either Reed or McCullom and that when Cain appeared instead of going to the place where it was his duty to be he voluntarily left a place of safety and sought out Reed and McCullom for the purpose of killing one or both of them, it was error in the trial court in qualifying the instruction to the jury by allowing them to "acquit the defendant Reed if they believed from the evidence that Reed and McCullom first began the difficulty, or was the aggressors," on the ground of self-defense or apparent necessity therefor.

J. N. SHARP, SCOTT & HAMILTON for appellant.

E. L. STEPHENS, JAMES BREATHITT, Attorney General, TOM B. McGREGOR, Assistant Attorney General for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Appellant, Lee Reed, was convicted of the crime of manslaughter and his punishment fixed at confinement in the penitentiary for a term of three years. From the judgment of conviction he appeals.

The facts appearing from the record are as follows: Appellant, together with Bill McCullom, John D. Baker, Bob Baker and another party were together a greater portion of the day of March 18th, 1910. For a while they were just outside the town limits of Corbin having a shooting match. Just before 6 o'clock they were on the sidewalk in front of White's restaurant, which is located diagonally across the street from the depot building. About 6 o'clock the deceased, James Cain, passed along the concrete pavement by the side of Gover's store. When he reached this store, he turned and passed in front of it and the Manhattan restaurant. These two buildings are directly across the street from the depot. He then passed across the street and proceeded along the pavement adjoining the depot building towards the baggage room. He carried with him a valise. When he got near the baggage room he met appellant, McCullom and the two Bakers. Perhaps a fifth man was along, but the evidence upon this point is not clear. Appellant and McCullom each had a pistol in his right hand. The deceased and appellant and McCullom engaged in a quarrel. They were then seen to turn and start back towards the main entrance of the general waiting room, which is located a few feet above the sidewalk and is reached by ascending about a dozen steps. Reed and McCullom were each seen to strike Cain. The latter had the grip in his

right hand and he used his left hand to ward off the blows. When they reached the steps leading to the general waiting room, the deceased walked up to the fourth or fifth step and leaned against the wall. Reed and McCullom both stopped. Something was said about one Bill French; whereupon the deceased remarked, "I never said such a thing." McCullom told him not to deny it, or he would shoot him in two. The deceased replied that they had taken advantage of him, and held up his coat to show them he had no gun. Just about this time R. A. Early, police judge of Corbin, started across the street. He told Gover to telephone for the police. He then walked up to where the parties were, and, putting his hands on Reed and McCullom, demanded that they put up their guns. McCullom said, "All right, old man." The deceased then went up the steps and in the door. The police judge continued to talk to Reed and McCullom. After telling them that they must be better boys, he said, "You boys must go down to the court house with those guns." In this arrangement Reed and McCullom acquiesced. In the meantime the deceased, who was the gatekeeper at the station, went up the steps, passed through the swinging doors of the general waiting room, and walked over to the first bench in the room. He set his valise on the bench, opened it, and took therefrom a pistol. After examining the pistol and seeing that it was in good working order, he returned to the swinging doors. When he reached the doors he threw them open with his left hand and said, "Look out, Squire Early." The Squire fell back, Cain immediately fired at McCullom and killed him. He then turned and fired two shots at appellant. The witnesses differ as to the time when Reed shot. Some say that he shot immediately after Cain discharged the first shot and killed McCullom; others state that appellant did not shoot at Cain until the latter first shot at him. Appellant fired three shots, one of which mortally wounded Cain, and he died in about fifteen minutes.

According to the evidence for the defense, when appellant and McCullom met Cain he said, "Hello; I see you damn boot healers are back in town," or "what are you damn boot healers doing here," or something like that. McCullom said, "Yes, if you are talking that at me, we are back, and what is that to you?" Cain replied, "Anything you want, and any way you want it." McCullom said, "Don't talk so damn 'skeery.'" About

that time Cain shook his fist at McCullom and shoved him. Then Cain and McCullom began to scuffle. Appellant ran in and said, "Don't have any trouble; cut this out." Cain replied, "What have you got to do with it; you get out of the way," and hit Reed in the face. Appellant then kicked, and his foot struck Cain's coat. Cain then went up the steps a portion of the way, and about that time Squire Early arrived. The squire put his left hand on McCullom's shoulder and his right hand on Reed's shoulder, and said, "You boys will have to go down to court about these pistols." McCullom replied, "All right;" Reed said, "We will go down." While the squire was talking to Reed and McCullom, Cain went on into the depot. In a short time he returned, and, throwing the door open, said "Look out, Squire, I am going to kill them both." Reed said, "Look out, Will," and jerked McCullom by the shoulder. Just as McCullom turned around, Cain fired his pistol and McCullom pitched forward on the steps. Cain then turned his pistol on appellant and fired once, perhaps twice; whereupon appellant fired and killed Cain.

Besides other instructions which are not complained of and which are not subject to criticism, the court gave the following instruction on self-defense and the defense of another:

"No. 4. If you shall believe from the evidence that at the time the defendant shot at and wounded James Cain so as that he died thereby, if he did so, he believed, and had reasonable grounds to believe, that he, or William McCullom, or either of them, was then and there in danger of death or the infliction of some great bodily harm at the hands of said Cain, and that it was necessary, or was believed by the defendant, in the exercise of reasonable judgment to be necessary to so shoot and wound the deceased in order to avert that danger, either toward himself or William McCullom, real, or to the defendant apparent, then you ought to acquit the defendant upon the ground of self-defense, or apparent necessity therefor, or the defense of another, or apparent necessity therefor, unless you shall believe from the evidence, beyond a reasonable doubt, that the defendant, Lee Reed, or the defendant Lee Reed, and William McCullom first began the difficulty and were the aggressor, or aggresors, by assaulting or striking said Cain, then you ought not to excuse the defendant on the ground of self-defense, or the apparent necessity there-

for, or the defense of William McCullom, or the apparent
necessity therefor, unless you believe from the evidence
that defendant, or he and William McCullom, had aban-
doned such assault and difficulty in good faith, and then
the deceased attempted to kill the defendant, or to do him
serious bodily harm, or attempted to kill William Mc-
Cullom, or to do him serious bodily harm, or either of
them, so that it was necessary, or was believed by the
defendant, in the exercise of reasonable judgment, to be
necessary to shoot the deceased to avert that danger,
either toward himself or William McCullom, real, or to
the defendant apparent, in which event you ought to ac-
quit the defendant on the ground of self-defense and ap-
parent necessity therefor, or the defense of another, or
apparent necessity therefor.''

It is earnestly insisted that the court erred in qualify-
ing appellant's right of self-defense and his right to de-
fend McCullom, and that such qualification is not appli-
cable to the facts of this case.    While there is some con-
trariety in the evidence as to what took place during the
scuffle along the sidewalk as the parties approached the
steps leading to the general waiting room, all the wit-
nesses agree as to what took place between Reed, Mc-
Cullom and Squire Early, and to the further fact that,
after Squire Early's approach, Cain proceeded up the
steps and went into the general waiting room.   The wit-
nesses differ as to the time Cain was gone, but he was
certainly gone long enough to put his valise down, open
it, take therefrom the pistol, examine it, and return to the
door.    While Reed and McCullom were not technically
under arrest, it is perfectly apparent that they had both
acquiesced in the arrangement suggested by Squire Early
and had agreed to follow his directions in the matter.
After Squire Early arrived neither Reed nor McCullom
made any effort to shoot or do any bodily harm to Cain.
All the evidence shows, then, that the difficulty, so far as
Reed and McCullom were concerned, was then at an
end.    When Cain walked up the steps and entered the
general waiting room he had reached a place of safety.
He was then and there in no danger at the hands of
either Reed or McCullom.   His place of business was on
the other side of the building.   It was not necessary for
him to return by the door through which the shooting
was done in order to take up his duties for the evening.
Instead of proceeding on his way to the gate where it
was his duty to be, he voluntarily left a place of safety

and sought out Reed and McCullom for the purpose of killing one or both of them. While there is evidence tending to show that Reed and McCullom were the aggressors in the first difficulty and brought on the difficulty by first assaulting Cain, the evidence further shows that that difficulty had been abandoned and was at an end. When Cain, who was then and there in no danger whatever at the hands of either Reed or McCullom, because they had both acquiesced in the suggestion of Squire Early that they go to the court house, began to shoot, it was in effect the beginning of a new difficulty. That being true, he could not, had he not been killed, have justified his conduct under the plea of self-defense.

As all the evidence shows that the first difficulty was at an end and that Reed and McCullom had in good faith abandoned the difficulty and were not in any way seeking to do bodily harm to Cain, we conclude that the court erred in qualifying the instruction in the manner complained of. On the next trial the court will give the instruction without the qualification referred to. The court will also exclude from the consideration of the jury any evidence in regard to McCullom's reputation for peace and quiet. The court will further see to it that neither the counsel for the accused nor the Commonwealth's attorney is permitted to read to the jury any extracts from the Code, the statutes, or any other law book.

Judgment reversed and cause remanded for a new trial consistent with this opinion.