## Lawson v. Commonwealth.

(Decided February 7, 1913.)

## Appeal from Shelby Circuit Court.

1. Homicide—Indictment for Murder—Instructions—Where Refusal to Give Self Defense Instruction Not Error—Evidence.—Upon the trial of appellant, jointly indicted with Martin and Wade, charged with the murder of deceased, there being no evidence that deceased at the time of the assault upon him attempted to use any violence, or that he had a weapon of any kind, or assumed any menacing attitude, and the denial of appellant that he had any part in the difficulty, or that deceased struck him or attempted to, precludes the idea of self-defense, and the lower court properly refused the instruction upon it.

2. Homicide Refusal to Give Self Defense Instruction—Introduction of Affidavit for Continuance Filed at Previous Term.—As to the contention that the affidavit offered in evidence by the Commonwealth filed for a continuance by appellant at a previous term of the court, required the giving of an instruction upon self defense, it is sufficient to say there was no exception by appellant to its introduction, it was only introduced for the purpose of contradiction, and under the express direction of the court could be considered for no other purpose.

3. Homicide—Motion for New Trial—Alleged Newly Discovered Evidence.—There being no contention that the paper alleged to have been signed by deceased contained anything different in substance from what was testified to by appellant's two witnesses, its introduction was properly refused. It could have had no different effect from the testimony of the two witnesses, and for that reason was not newly discovered evidence, but would have been merely cumulative.

4. Argument of Counsel—Objection to—When Bill of Exceptions does not Contain Language Used.—There is no merit in the contention that the Commonwealth's Attorney made improper use of defendant's affidavit for continuance, for the bill of exceptions does not show what language he used, or in what way he used the affidavit, or that objection was made at the time, or that the lower court had its attention called to it, or was given an opportunity to pass upon the alleged conduct of the Commonwealth's Attorney.

5. Trial—Motion to Discharge Jury—Review—Code Provision.—In response to the contention that the trial court erred in overruling the motion to discharge the jury, it is sufficient to say that under the provisions of Section 281, Criminal Code, even since the amendment of 1910, this court is without power to review rulings of the lower court upon such motions.

6. Homicide—Excitement in Community—Absence of Controlling Effect of Upon Jury.—While there was a good deal of excitement in the neighborhood where the homicide occurred, at the time, the

fact that it occurred in October, and appellant was not tried until the following May, it is improbable that the excitement could have had any controlling or unusual effect upon the verdict of the jury.

E. B. BEARD, T. B. ROBERTS, for appellant,

JAMES GARNETT, Atty. Gen'l., CHAS. H. MORRIS, for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellant, Tom Martin, and Warren Wade, were jointly indicted in the Shelby circuit court, charged with the murder of Hardin Inghram.

In the first count of the indictment, appellant was charged with the killing, and the other two with being present and aiding and abetting. Upon his separate trial, as principal, appellant was found guilty and sentenced to death, and his motion and grounds for a new trial having been overruled, he appeals.

The facts disclosed on the trial were about these: In the early evening of Saturday, October 21, 1911, the deceased, Hardin Inghram, then about nineteen years of age, was together with some other young people, boys and girls, on the streets of Waddy, a small town in Shelby County; there being quite a little crowd of them, they practically blocked the sidewalk; at that time two negro girls, one of whom was Jeanette Wade, came along, and she had a large clothes basket on her arm, and by reason of the presence of the young white people on the street and being encumbered by the basket, either voluntarily stepped off the sidewalk, or was, as she claimed, pushed or knocked off by Hardin Inghram.

Immediately afterwards, she proceeded a short distance to a store where she met her brother, and appellant, who was her sweetheart, and told them that Hardin Inghram had pushed or knocked her off the sidewalk, and appellant at the time cursed Inghram and said "I am going to get him." Shortly thereafter the party of young white people separated, the young ladies and one of the boys going in one direction, and the other boys, including Hardin Inghram, going up toward the depot to see the west bound train pass.

On the way to the station, they either met or overtook appellant; the preponderance of the testimony is that appellant first accosted Inghram, but there is some evidence to the effect that Inghram first called him; at any rate, Lawson said to him, "how come you to push my girl off the street," and Inghram promptly denied that

he had done so, and said if appellant would go back down to the telephone exchange, he could prove by Mr. Clark that he had not done it, and offered to prove to him by the other white boys present that he had not; but appellant insisted that he had.

During this wordy altercation, Tom Martin and Warren Wade came up hastily and immediately upon their arrival on the scene, and after a very few words, Tom Martin struck Inghram on the head with a tobacco stick which he had in his hand, and almost simultaneously, appellant struck Inghram in the right side with his knife, they each making but the one stroke.

Inghram was taken back by one of the party, his wounds dressed, and he lingered for twenty-one days and then died. The evidence is conclusive that he died from the effect of the knife wound.

Inghram immediately after the occurrence said he was shot and that Tom Martin had shot him, and even after he knew that he had been cut, he insisted that Tom Martin had cut him. It appears that it was dark at the time and place of the difficulty, and we are of the opinion that the stroke on the head with the tobacco stick so dazed him, as that he did not know or realize that he had the knife wound, or by whom it had been inflicted; at any rate, whatever his statements were, the record shows beyond question that he was mistaken in saying that Tom Martin had either shot or cut him.

The knife was seen in the hand of Tom Lawson, he was seen to make the stroke, he had the knife immediately afterwards, he boasted to several persons that night after the occurrence that he had used his knife, and he confessed some months later that he had done the cutting.

The defendant testified that he was not engaged in the difficulty, but that he was near there when the others were engaged in it; in fact, near enough to receive a lick on the head from a buggy whip or a loaded cane as he states; but that Hardin Inghram did not strike him at all, and he didn't know who did.

The only other testimony offered by the defendant was by several witnesses, that his reputation was that of a quiet and peaceable negro.

After the defense had closed its testimony, the Commonwealth recalled the defendant, and offered in evidence an affidavit filed by him at a previous term of

court for a continuance; in which he stated that he could prove by three absent witnesses, that Inghram had struck him over the head with a loaded whip, and continued to attack him, and was about to inflict bodily harm upon him, when defendant in his necessary self-defense cut the said Inghram. The bill of evidence on file does not show that appellant objected to the introduction of this affidavit or saved any exception thereto; but the bill of exceptions recites that the same was over his objection permitted to be put in evidence, but there is no exception saved in either bill. The court however, on its own motion expressly directed the jury that they might only consider the affidavit as affecting the credibility of the witness, if it did; and not as substantive evidence or as proof tending to establish any fact in the case.

The court gave instructions on wilful murder and voluntary manslaughter, but failed to give an instruction on self defense, and refused to do so, when one was offered by appellant's counsel.

1. The refusal to give the self-defense instruction is seriously urged as ground for reversal; but an inspection of the testimony will disclose, that no single eye witness to the transaction said or intimated that Inghram was at the time of the assault upon him by Lawson and Martin, attempting to use any violence toward either of them, or had any weapon of any kind, or assumed any menacing attitude. This taken with the evidence of appellant himself, who denies that he had any part in the difficulty, or that Inghram struck him or attempted to, would certainly preclude the idea of self defense. But it is insisted that the affidavit which the Commonwealth put in evidence disclosed a state of case, which necessitated the giving of the self defense instruction, because the evidence of witnesses therein referred to, would have made out a case of self defense; and appellant cites Frazer v. Commonwealth, 114 S. W., 268. Ratchford v. Commonwealth, 16 Ky. L. R. 411, and other cases, which it is claimed establish the rule, that even if the defendant testifies that he did not commit the crime with which he is charged, that if there is other evidence either in the form of his own statements or otherwise, that he did commit it, and committed it in a certain way which proved, or might have conduced to prove that he had acted in self defense, was still entitled to the self defense instruction. But it is sufficient to say in this case there was no

exception by appellant to the introduction of the affidavit as evidence; and if there had been, it was only introduced and considered for the purpose of contradiction, and under the express direction of the court could have been considered by the jury for no other purpose.

2. At the trial the court permitted two witnesses who were introduced by the defendant, to testify that they were present when Inghram made a statement in writing, which he signed and swore to, to the effect that Tom Martin and not appellant, was the one who stabbed him; and they also state that at the time of the trial the paper had been misplaced and could not be found. On the motion for a new trial, appellant states that this paper had been found in the meantime, and said it could then be produced, and asks for a new trial upon the ground that it is newly discovered evidence.

There is no contention that the paper contained anything different in substance from what was testified to by the two witnesses, and if it had been introduced on the trial, it could have had no different effect from that testimony, and was not in a proper sense, for that reason, newly discovered evidence, but would have been only cumulative. Appellant on the trial got the full benefit of the contents of this paper.

3. It is urged that the attorney for the Commonwealth in the closing argument made improper use of defendant's affidavit, which had been introduced in evidence; while it is stated in the bill of exceptions, that the Commonwealth's attorney claimed in his argument, that this affidavit showed that the defendant was guilty of the cutting, there is nothing to show what language was used by him, or in what way, or to what extent he used the affidavit, or that any objection was made to it at the time of the argument, or that the lower court in any way had the matter called to its attention at the time, or was given an opportunity to pass upon the propriety or impropriety of the Commonwealth's attorney's conduct.

4. Appellant also complains that the court erred to his prejudice in refusing to continue the case upon defendant's motion, upon the filing of his affidavit disclosing what would be the testimony of the absent witness, Chester Perry; but the record discloses that upon the filing of the affidavit, the attorney for the Commonwealth agreed that the same might be read as the deposition of the absent witness therein mentioned, and that thereupon

the defendant announced ready; and we fail to find in the record where the defendant read or offered to read that affidavit as the deposition of the witness.

5. Counsel urge as ground for reversal that the lower court erred in overruling defendant's motion made during the trial to discharge the jury, because it came to the knowledge of defendant for the first time during the trial that one of the jurors before the trial begun, stated that the defendant was guilty and ought to be hung, which facts were brought to the attention of the court by defendant's affidavit filed during the trial, and motion made at the time to discharge the jury.

It is sufficient to say in response to this, that under the express provisions of Section 281 of the Criminal Code even since the amendment of 1910 thereto, this Court is without power to review rulings of the lower court upon such motions. Hendrickson v. Commonwealth, 146 Ky., 742.

6. And finally, it is urged as ground for reversal, that the verdict was the result of passion and prejudice, because of talk of a mob immediately after the killing and at the time of the trial. While it appears that immediately after the killing there was a good deal of excitement in the town of Waddy, and possibly some irresponsible talk of a mob, there is no satisfactory evidence that there was any organized movement or effort in that direction, or that there was anything more than some individual expressions of excitable persons immediately thereafter. The killing occurred in October and appellant was not tried until the following May, and after this lapse of time, it is improbable that the excitement or feeling in the community could have had any unusual or controlling effect upon the verdict of the jury.

Because of the extreme penalty inflicted, we have carefully and cautiously gone over, and thoughtfully considered every ground urged for reversal; but upon consideration of the whole case, have reached the conclusion that it was a foul and unnecessary murder, and that the defendant has had a fair and impartial trial.

Judgment affirmed.