## Carroll v. Commonwealth.

(Decided May 6, 1938.)

NAPIER & NAPIER for appelllant.

HUBERT MEREDITH, Attorney General, and WILLIAM F. NEILL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The grand jury of Letcher county returned an indictment against appellant, Pete Carroll, Jesse Eldridge, Andy Holland, and Willie Arnett, jointly accusing them of the crime of grand larceny committed in that county one night in the month of May, 1937, by stealing and carrying away about $120 worth of copper wire, the property of the Kentucky River Coal Corporation, without the consent of the owner and against its will, and with the felonious and fraudulent intent of appropriating the property to themselves. Holland and Arnett entered pleas of guilty to the indictment and were sentenced to terms in the penitentiary, which they were serving at the time of the separate trial of

appellant, and in which they gave testimony for the Commonwealth. The record does not disclose what, if anything, has been done with the indictment against Jesse Eldridge, but at the trial of appellant the jury, under the instructions of the court—perfectly and most correctly drawn—returned a verdict finding him guilty and fixing his punishment at confinement in the penitentiary for two years. His motion for a new trial was overruled, from which he prosecutes this appeal.

Brief of counsel for appellant under the heading of "Points Discussed" appends two grounds for a reversal of the judgment, and which are: (1) "The court erred to the substantial rights of the appellant in erroneously instructing the jury in instructions Nos. 1, 2 and 3; and (2), failure of the court to peremptorily direct an acquittal because of alleged fatal variance between the proof and the charges made in the indictment." But two pages of the brief (typewritten) are devoted to a discussion of those alleged grounds and in neither of them is a case from this or any other court cited, nor is our attention called to any criticism of the instructions (perhaps because they are not subject thereto), except a general statement to the effect that the court did not instruct the jury on defendant's theory of the case; which theory was that, although he was present at the time the wire was taken and hauled away in his own car—which he was driving and in which it was found upon the arrest and apprehension of all four of the defendants some few minutes after they left the mine from which the wire was taken and only about half a mile distant therefrom—yet he did not personally participate in taking the wire from the mine, in cutting it into pieces whereby it might be conveniently carried away, nor in loading it into the car. We acknowledge ourselves utterly incapable of perceiving any theory of the case advanced by appellant calling for a concrete instruction, and the argument that the instructions were erroneous or incomplete because the court failed to present therein defendant's theory of the case to the jury is wholly without foundation. The only theory he had—and the only one he pretended to advance—was that, although present, yet he was not guilty, and that theory was sharply and most properly and correctly submitted to the jury.

The argument in support of the contention that there was a fatal variance between the allegations of

the indictment and the proof is based exclusively upon the fact that the indictment charged each of the defendants therein with a joint stealing as principals, and that the proof tended to and did show that appellant was rather an aider and abettor in the commission of the theft, with his co-defendants as principals and who actually procured, prepared, and loaded the wire into appellant's car, driven by himself. That argument has been frequently made by zealous counsel representing indicted defendants for violations of the criminal laws, but each and every time it was made the court before which it was done always overruled it upon the ground that one indicted as a principal may be convicted, although the proof shows that he was only an aider and abettor. Shelton v. Commonwealth, 261 Ky. 18, 86 S. W. (2d) 1054, and numerous other cases in notes (4) to and including (4h) to section 122 of the Criminal Code of Practice as contained in the 1938 Edition of Carroll's Kentucky Codes. Under that rule of invariable practice it was competent and proper in this case to submit to the jury appellant's guilt as an aider and abettor of his co-defendants in the commission of the crime, although he was indicted and charged as being a principal with them in its commission. The alleged variance, therefore, upon which counsels' scant argument is made evaporates and disappears.

As showing the childlike innocence (?) of appellant, and to some extent of his counsel—although not necessary to a decision of the case—we will venture to make a brief statement of the facts. The mine from which the stolen wire was taken was located in Letcher county, Ky., and the operation of the plant appears to have been temporarily suspended for some cause. The watchman and other persons (perhaps miners) living around the tipple discovered higher up the mountainside on the night of the robbery somewhere about 9:30 or 10 o'clock, an automobile approaching the tipple or near thereto. It stopped and several persons got out of it and its lights were extinguished; following which occasional flickerings of light would appear, indicating the employment of flashlights. They immediately became suspicious that the offense contained in the indictment was being committed, since similar ones had theretofore been committed at the same mine and at various others in that community. They concluded, however, to wait until the departure of the supposed

thieves, at which time they would all be collected in their automobile and a better opportunity thereby afforded to capture all of them. They did so continuously from the hour of discovery until about 3:30 o'clock in the morning. After the parties started to leave in the automobile—with 600 pounds of wire in the car—the watchers started to apprehend them and did so about half a mile from the starting point. All four of the defendants were in the car with the wire neatly packed between the back and front seats, and, perhaps, partially over the back seat, after having been cut into lengths that would permit it to be transported in that manner. The other defendants then and there admitted and acknowledged that they were entrapped, but appellant claims—and he is to some extent corroborated in that statement—that he laid low and said nothing until he was shortly thereafter carried before a convenient justice of the peace where he stated that, although he was present, and was driving the guilty car which was his own, yet he was not guilty because the suspicious circumstances surrounding him happened in this way:

That at noon of the day, preceding the robbery the following night, Andy Holland came to appellant's residence in Perry county—some 25 miles from the scene of the larceny—and requested defendant to take him (Holland) and the other two defendants, Jesse Eldridge and Willie Arnett, over to Brachey in Letcher county, at or near which the robbery occurred, where those three intended to engage in the sport of fishing, although there is nothing in the entire proof to show that there is any sort of stream or pool near to or about the place wherein fish exist or may be obtained; that Holland stated at the time that he did not want to leave on the contemplated fishing excursion until somewhere about 4 o'clock that afternoon (evidently for the purpose of engaging in night fishing) and in which sport they expected to indulge until about 3 o'clock in the morning; that Holland offered him $3 to make the trip and to carry the fishermen to the located fishing grounds, but that he (appellant) told him that he could not remain at the place, after arriving there, for the length of time contemplated and that Holland then told him that he might return back home (25 miles) and return later in the night, which, if done, an additional $3 would be paid, and that he then agreed to the proposition; that

pursuant thereto he placed himself and his wife and his two children on the front seat of his car and the three fishermen on the back seat, but neither of whom had a fishing line or pole, or any other fishing equipment; that he carried them to the place where they got out and then arranged to return for them at about 3 o'clock next morning; that he started for home, and lo and behold, just a quarter of a mile further along the road he overtook his brother, Joe Carroll, who lived at that time 200 miles away from that spot, somewhere in Grayson county, near Leitchfield, Ky., together with two companions, who were on their way to West Virginia, seeking some kind of work. The astonished appellant inquired of his brother (who with his companions were walking) why he was thus situated at that hour of the night and was informed by the brother that some part of his car, located a mile back, had broken down and that they had started on a mission to see if they could find a garage at which they might procure the broken part, but they had not discovered appellant before he departed for home, although his car was located on or near the road they had traveled after the brother's broken-down car was left parked by the side of the road only 100 yards or so away. Wonderful coincidence!

Appellant thereupon informed his brother, and the latter's companions, that there was a man living close to where he did—25 miles away—from whom he thought the necessary broken part could be obtained, and that his brother and companions then got into appellant's car and drove with him and his family that 25 miles. They were successful in obtaining the parts, according to appellant and his brother, and they then asked appellant to return them to their broken down car 25 miles distant, but which he declined to do at that time—saying that he was going back to that place later in the night and that, if they would retire at his house and wait until that time, he would convey them back to their crippled car, all of which was agreed to and carried out; that when he arrived at the place where he had agreed to return Holland was standing there and appellant asked him where was his fish, when Holland pointed to a stack of cut up wire ready to put into a vehicle for transportation, whereupon appellant said that he had not agreed to engage in transporting wire, and at first refused to do so. But Holland told him that

he had bought the wire from a man living just around back of the tipple and that he could prove that fact if appellant would go around with him to see the seller, but appellant concluded that there would be no necessity in losing time to make that investigation and consented to transport the fishermen and their purchased (?) wire, upon the ground that, as he said, Holland had told "such a plausible story." He was corroborated in a part of his testimony by his brother and the latter's companion, Hunt. Fortuitous furnishing of rescuing proof!

On the other hand, Holland and Arnett, acknowledged accomplices of appellant, testified that the latter suggested the robbery and arranged the time and manner of its commission, which was carried out according to his plan; that he was to and did furnish the car in which to make the trip and with which to transport and carry away the stolen property, as well as the perpetrators of the crime, and they denied the "fish story."

In the condition of the proof as so outlined counsel in brief say: "We must admit at the outset that the circumstances of the case are such as would cast suspicion that appellant was actively engaged in the crime charged in the indictment, but he persistently denies that he was connected with his co-defendants in the perpetration of this crime," and they, therefore, argue that the verdict is not supported by the evidence and the court erred in not directing a peremptory acquittal. For the sake of defendant's wife and children we are sorry that we do not possess sufficient gullibility to accept counsels' interpretation of the evidence, and which seems also to have been the condition of the members of the jury when they discarded that theory and found defendant guilty.

We are unable to find fault with that conclusion, and for which reason, and others hereinbefore stated, the judgment is affirmed.