## Commonwealth v. Branham.

(Decided Sept. 30, 1938.)

HUBERT MEREDITH, Attorney General, for appellant.

J. A. RICHARDS, G. C. EWING and W. B. WHITE for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Certifying the Law.

The appellee, S. T. Branham, was indicted by the grand jury of Bath county for the murder of one Clint Fugate. Upon a trial of the case he was convicted and

sentenced to the penitentiary for a period of five years. Motion and grounds for a new trial were filed, which the trial court sustained and granted appellee a new trial. The Commonwealth has appealed for a certification of the law, insisting that the grounds filed for a new trial were insufficient and the court erred in sustaining the same. The grounds for a new trial are, in substance, that the court erred in the admission of evidence offered by the Commonwealth and in sustaining objections to evidence offered for defendant; the court erred in the instructions given; the court erred in failing to sustain a demurrer to the indictment; the verdict is against the law and the evidence and the defendant has been denied a fair trial to the prejudice of his substantial rights.

The court entered the following order sustaining the motion and grounds for a new trial:

"The defendant, S. T. Branham, having filed his motion and grounds for a new trial herein by the counsel stressed in particular two points relied upon; that there was a material variance between the language of the indictment and proof heard by the jury and that the court failed to give to the jury a self-defense instruction and same having been submitted on said motion and the Court advised sustains said motion and grounds and grants to the defendant a new trial, * * *."

That part of the court's order sustaining the motion, "that there was a material variance between the language in the indictment and proof heard by the jury," was not made a ground for a new trial, and it is doubtful that the court should have considered anything not included in the motion and grounds. However, this appeal being for the purpose of obtaining a certification of the law, we will consider the merits of that question.

The indictment charges in the usual form that appellee unlawfully, wilfully, maliciously, feloniously and with malice aforethought did shoot and kill Clint Fugate, etc. Upon a trial of the case appellee's theory of defense was that he shot Joe Day in self-defense and the same bullet, after penetrating Joe Day's neck, struck the deceased, resulting in his death and that it was not his intention to shoot the deceased. The alleged variance between the allegations of the indictment and the

proof is that the indictment charged that appellee "wilfully" (which means intentionally) shot the deceased, but, it is argued, the evidence showed that he did not intentionally shoot deceased.

The question to be determined is whether or not the grand jury in its indictment was required to detail the circumstances and facts by alleging that the defendant fired the shot at Joe Day and struck the deceased.

There have been many cases in Kentucky which have reached this court on appeal, where the indictment charged the defendant with the intentional killing of the person killed and the defendant pleaded as a defense the lawfully shooting at another and the accidental killing of the person actually killed. In all such cases the defendant relied on the facts as a defense which were submitted to the jury by appropriate instructions, in substance that if the defendant had the lawful right to shoot or kill the person intended, in that event the defendant was entitled to the benefit of the law of self-defense, notwithstanding he killed a person other than the one intended. However, in the case of Thompkins v. Com., 90 S. W. 221,. 28 Ky. Law Rep. 642, this question was involved and it was held not to be a variance.

In 30 C. J. p. 100, the rule is thus stated:

"An indictment for the murder of one person in an attempt to kill a different person need not allege an actual assault upon the person designed to be killed. It should allege an assault on the person killed in all respects as if he were the intended victim."

In State of Washington, Respt. v. Newell S. Barr, Appt., 11 Wash. 481, 39 P. 1080, 29 L. R. A. 154, 48 Am. St. Rep. 890, this precise question was raised and determined. The court said [page 1083]:

"In the information the defendant is charged with having purposely killed the deceased, and, since the proofs showed that he could have had no intention to kill any particular person, it is claimed that the information was insufficient, or, if sufficient, was not supported by the proofs. In our opinion, the statement in the information as to the intent to kill the particular person would have been sufficient in an

indictment at common law, and would have been supported by proof of having done an act with intent to kill another person than the deceased, which resulted in the death of the person whom it was charged he intended to kill. But it is contended that our statute, which requires the fact to be stated in the information, controls, and that, even although this information would have been good at common law, it was not good under our statute, for the reason that the facts were not correctly stated therein. The information was proof against this attack for two reasons: First, that the facts were substantially stated,—the general intent to kill became special when the means made use of had taken effect on a particular person; and, secondly, our statute as to informations, when invoked, must be taken as a whole, and when so taken an information is good thereunder against an attack of this kind, unless it were possible that the defendant could in some- manner have been misled thereby to his injury; and it is evident that this defendant could not have been so misled by the statement that he intended to kill the deceased when the facts were that he had a general intent to kill, which resulted in the death of the deceased.''

It appears that the Washington statute discussed in the opinion supra, is substantially the same as our Criminal Code of Practice, in reference to the sufficiency of an indictment, as set out in chapter 2, articles 1 and 2, sections 118-137 inclusive, and particularly section 122, subsection 2. It is the well established rule in this jurisdiction that an indictment is sufficient if the allegations are such as to inform the defendant of the nature of the offense with which he is charged so as not to mislead him in the preparation of his defense. In the case at bar the defendant knew all the facts as testified to by him and knew that the death of the deceased resulted from the shot he says he fired at Joe Day. It cannot be said that he was misled or otherwise hindered in the preparation of his defense, which he actually presented and which the court submitted to the jury under appropriate instruction.

In Luttrell v. Commonwealth, 250 Ky. 334, 63 S. W. (2d) 292, it is held that it is not necessary for an indictment to charge that the killing was ''intentionally''

done. When the indictment charges that the killing was done unlawfully and with malice aforethought, intention will be presumed. Section 130, Criminal Code of Practice. It appears from this authority that the word "wilfully" (intentionally) was surplusage and not necessary. See, also, Roberson's New Kentucky Criminal Law, p. 490, sec. 367.

It is our conclusion, therefore, that there was no variance between the indictment and the proof and the court erred in granting a new trial upon that ground.

It is next insisted that the court erred in modifying the self-defense instruction given to the jury. The court gave the following self-defense instruction:

"The Court instructs the Jury that if they believe from all the evidence that at the time the defendant shot and killed Clinton Fugate, if he did shoot and kill him, that defendant was in immediate danger of death or great bodily harm, then about to be inflicted on him, or which reasonably appeared to defendant about to be inflicted upon him by Joe Day, then the defendant had the right to use such force as reasonably appeared to him to be necessary to protect himself from death or great bodily harm at the hands of Joe Day, and if the Jury believe from the evidence that at the time when defendant was in immediate danger of death or great bodily harm then about to be inflicted on him, or which reasonably appeared to defendant about to be inflicted on him by Joe Day, he (defendant) shot the said Joe Day and accidentally and unintentionally shot and killed Clinton Fugate, then the Jury will find the defendant not guilty on the grounds of self-defense and apparent necessity; but this instruction is subject to this modification, that if the Jury believe from the evidence beyond a reasonable doubt that the defendant began the difficulty in which said Clinton Fugate was killed by assaulting Joe Day with a deadly weapon when it did not reasonably appear to him to be necessary to protect himself from immediate danger or death or great bodily harm then about to be inflicted on him or which reasonably appeared to defendant about to be inflicted on him by said Joe Day, then, in that event the Jury cannot acquit the defendant on the grounds of self-defense and apparent necessity."

The objections to the instruction urged in brief of appellee is that the court should not have given that part of the instruction which, in substance, told the jury that it could not acquit defendant on the grounds of self-defense and apparent necessity if they believed from the evidence that the defendant began the difficulty in which Fugate was killed. It is insisted that there was no evidence that the defendant did bring on the difficulty. According to the evidence of defendant and his witnesses, defendant did not bring on the difficulty, but their evidence is contradicted by the witnesses for the Commonwealth. Joe Day testified as follows:

"Q. Did anything attract your attention as you went in? A. Yes, Mr. Branham and Fugate were in an argument.

"Q. Did you hear or learn what the argument came up about? A. No.

"Q. Describe from that point on what took place? A. I went in—the argument must have been pretty hot. Mr. Branham went back in his hip pocket and got a gun. He came up. I jumped at him and hit him and got against him.

"Q. What with? A. Nothing but my body. He came with it again. He shot before I got to him. It hit me and went on and hit Mr. Fugate."

Russell Vinson's testimony was somewhat similar to that of Joe Day. He detailed what happened at the beginning of the trouble and according to his evidence neither Joe Day nor the deceased was assaulting the defendant at the time he fired the shot.

It is our view that the evidence for the Commonwealth was sufficient to make an issue as to whether or not defendant was the aggressor, and that the court did not err in instructing the jury on that point.

Lastly it is insisted that the self-defense instruction was erroneous because it limited the right of the defendant to defend himself as against the assault of Joe Day but not of the deceased. We do not think there was sufficient evidence to warrant a self-defense instruction as against the deceased. According to the evidence of the defendant, Day assaulted him, pushing him back against or across the counter and was choking him at the time he fired the shot wounding Day and killing

Fugate, the deceased. He was asked: "At the time you fired this shot did you see Jim Bob Fugate (deceased)? A. I didn't. Q. Did you shoot at him? A. No, I didn't."

According to the defendant's own testimony Day was the man who was assaulting him and he did not as much as see the deceased at the time he fired·the shot nor did not intend to shoot him. We see no necessity of a self-defense instruction as against a person whom the defendant himself does not claim was assaulting him or attempting to do him any bodily harm or whom he did not as much as see at the time he fired the shot at his intended victim. We think the self-defense instruction given by the court was all that was necessary.

The other grounds set out in the motion and grounds for a new trial are not discussed in brief of either party and we need not consider them. This is particularly true since the court specifically stated in its order granting a new trial that it granted same be-cause of the grounds and questions we have discussed herein, which, as we have concluded, are insufficient. Commonwealth v. Denny, 271 Ky. 608, 112 S. W. (2d) 1016.

It follows that the court erred in granting defend-ant a new trial.

The law is so certified.