## Delk v. Commonwealth.

May 4, 1948.

Rehearing denied December 17, 1948.

580

Montgomery & Montgomery for appellant.

A. E. Funk, Attorney General, and Armand Angelucci, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The appellant, Henry Delk, was convicted of the murder of Garvil Burton in August 1946, and sentenced to life imprisonment. He seeks a reversal upon several grounds.

The indictment charges the appellant and ''some person whose name is unknown to the grand jury'' with

having committed the murder by "unlawfully, wilfully and feloniously" shooting and by striking Burton with a club, a deadly weapon. It further charges that each of them aided and abetted the other. The indictment is carelessly drawn, and only states the given name of the person killed in the concluding sentence. But it contains all the essential elements prescribed by the Criminal Code of Practice, secs. 122 and 125. It was not necessary to set out severally that one did the shooting and the other the striking. McGehee v. Com., 181 Ky. 422, 205 S. W. 577. Nor was it necessary to charge one by name as the principal and the other as an aider and abettor. It is a well recognized rule that an indictment may charge all persons as principals, the question of aiding and abetting being taken care of in the instructions, where the evidence warrants the submission on different character of action. It was proper for the indictment to charge that the killing was committed by both shooting and striking without undertaking to say which of the two parties charged had done either act. Carroll v. Com., 273 Ky. 429, 116 S. W. 2d 977. Nor was it necessary to have charged specifically that the crime was intentionally committed. That would follow as a matter of course, for without intent it would not be murder. Luttrell v. Com., 250 Ky. 334, 63 S. W. 2d 292; Commonwealth v. Branham, 274 Ky. 730, 120 S. W. 2d 234.

We find no merit in the claim that the verdict is flagrantly against the evidence, which under present practice would mean that the court should have directed a verdict of not guilty. The killing occurred at a schoolhouse pie supper. The record does not show any previous difficulty between the appellant and the deceased or just what their relations were, friendly or unfriendly. It is apparent that they knew one another. There is no evidence that the appellant was drinking, but it is shown that the deceased had been drinking before coming to the place. Nor is there any evidence that the appellant had a pistol until immediately before the shooting. But it is fairly well shown that deceased had obtained a 38 pistol from his friend, Grady Weir, before going to the school house and had it there in his right front pocket. He was shot with that caliber bullet and died immediately as the result.

A brother, Arvil Burton, testified in substance that the deceased, Garvil Burton, said something about wishing he had another brother's truck, and the defendant, Henry Delk, asked "What's that he said?" and knocked his cap off. The witness picked it up and suggested that they go on up the road. They had gone a short way when Delk came towards them, but went back towards the school house. The Burton boys and others were pushing an automobile which had stalled in the mud. While Garvil had hold of the car, near the windshield, Delk came up behind him and hit him on the head with a club. Garvil turned around and Delk grabbed him. The witness shoved him back while Garvil was holding onto the witness to keep from falling. Immediately Delk fired. Of this he is positive. After Delk had struck Garvil, the witness heard somebody say, "I have got the gun." He testified that Garvil did not get a pistol from Weir and had none on his person at the schoolhouse. On this point he is contradicted by Weir and other witnesses for both the Commonwealth and the defendant.

Willard Holt was apparently an unwilling witness for the Commonwealth. He testified that he was standing right by the parties, but claimed he did not know who did the shooting and did not see Delk's hands at the moment. He guessed whoever fired was "standing right where Henry was." He had heard Garvil say before being shot, "Don't do that; don't do that." When some unknown person said, "I have got the gun," Delk turned Burton loose. This witness had seen a pistol stick out of Garvil Burton's pocket. There were other witnesses for the Commonwealth, but their evidence does not add much to the foregoing to establish the defendant's guilt.

The defendant's story may be thus summarized: He had heard Garvil Burton say that he "wanted to beat hell out of, or shoot hell out of some son-of-a-bitch." He was standing nearby. Burton continued such threats, but they were at first ignored, Delk going back into the schoolhouse. As the crowd was breaking up he came out to go home and as he started toward his car, somebody called him and he turned back, and met the two Burton boys and Garvil repeated his desire "to beat hell out of some son-of-a-bitch." Delk assumed

that he intended the remark for him and stopped, and Burton directly addressed him. He made a motion to hit Burton but he stepped back and invited Delk out into the road. Two friends warned him not to go out; that Burton had a pistol and would kill him. The Burton boys walked on out to the road and Garvil drew his pistol and pointed it in the general direction of Delk and continued "parading around, calling me names and making threats." He added: "I did't know but what he was coming back after me; I didn't have any protection myself." Thereupon Delk went back of the schoolhouse and obtained a club and returned to the front. Burton came in his direction, throwing the beam of a flashlight around, and as we understand Delk's testimony, he stepped out of range of the light and was not seen. As we further gather, a few minutes intervened and Burton returned to where the stalled car was. Then, the defendant testified, he went up behind Burton and struck him with the stick, as he called it. He lost his grip on the stick and grabbed Burton, holding his hands behind him, knowing that he had a gun. We quote: "I said 'Burton, give me that gun,' and he said 'I don't have any gun,' and about that time somebody said, 'I have got the gun,' and somebody stabbed me in the back." He then exclaimed he had been cut, turned Burton loose and backed away. When he had gone something like 25 feet, Burton followed him with "a flashlight in his left hand and something in his right hand." He said: "Burton don't do that," and then somebody to his left fired the shot and Burton fell. The defendant denied that he did the shooting, and insisted that he did not know who fired the pistol. While he could not say who had stabbed him, he described Arvil Burton's location and actions so as to indicate that it was he who had stabbed him.

We are not quite sure that either the story of Arvil Burton or of the defendant is an accurate account of what happened, except the fact that Delk came up behind Burton and hit him a terrific blow with a club.

Layall Brown saw Delk come up behind Garvil Burton and hit and grab him. At that point, he testified, some unidentified "small fellow" ran up and reached around and took the pistol out of Garvil's pocket and said "I have got the gun." (Arvil Burton is a small

man.) This witness stated that Delk stepped back, saying, "I am stabbed," and then the shot was fired by some person whom he did not see.

Omer Burkett testified to Garvil Burton's going around with a pistol and flashlight, swearing. He heard him tell Delk to come out into the road and he would kill him. He saw Arvil stab Delk. Garvil still had the flashlight and "what looked to be a knife or a gun." He took a few steps and "a gun fired from my right and behind me." Delk was then right in front of the witness. He said that Delk did not fire the pistol, but he did not know who had done so. After Arvil had stabbed Delk, "He made himself scarce; I don't know where he went to." Mrs. Burkett testified that Delk did not shoot, but did not know who did. Other witnesses testified to Burton's belligerent attitude, and one related a specific threat against Delk, which, however, was not communicated to him.

The fact that Delk had armed himself with a club, gone out to where his adversary was, and struck him a terrific blow from the back makes him the aggressor. There was no legal justification for such an act. He may have been warranted in arming himself with the club in anticipation of Burton's future actions, but he was not justified in using it as and when he did for it was not in his defense. The jury may have believed that when he grabbed Burton he obtained his pistol and stepped back and shot him; not an unreasonable conclusion. On the other side, it is certain that Delk was stabbed in the back, and notwithstanding Arvil Burton's denial, it is a reasonable conclusion that it was he who stabbed Delk, and deducible that it was he who obtained his brother's pistol, saying "I have got the gun," and fired at Delk, missed him, and struck his brother. In any event, it was the prerogative of the jury to accept Arvil Burton's testimony, corroborated somewhat by Willard Holt, in preference to that of the defendant and the other witnesses.

Dr. Poppelwell examined the body the night of the killing. He testified the bullet had entered the right front. Upon opening the chest he found it had penetrated the large artery near the heart. Death was caused by an internal hemorrhage and occurred, in the doctor's

opinion, within a very short time. About three weeks later the body was exhumed, and the doctor performed a post-mortem operation and recovered the ball from the body. On this examination he found concussion and deterioration of the brain, and a rupture of one of the main blood vessels at the base of the brain. In his opinion the blow which Burton had received had caused unconsciousness or semi-consciousness. This would have caused his death in 48 to 72 hours had he received no other injury. We think this latter evidence was competent. It completed the account of the injuries the man had suffered and the fact that the defendant admitted striking the blow made it of material importance.

The testimony of the undertaker that the action of the embalming fluid indicated an interruption or break of a blood vessel at the base of the brain was not harmful even if it should be conceded that the witness was not qualified to express an opinion.

The court submitted the case to the jury only on the charge of murder and voluntary manslaughter caused by the shooting. There was no reference in the instructions to a striking with the club. The appellant argues that he was entitled to instructions on malicious striking and wounding with intent to kill, and a misdemeanor instruction on striking without such an intent. This, it is said, would have permitted the jury to find him guilty of striking the blow which did not cause the man's death and to exculpate him of the actual killing. Under the given instructions, the jury must have acquitted the defendant if they did not believe he did the shooting. The court went further than necessary and instructed that if the jury believed that someone other than the defendant had shot Burton, they should find him not guilty. We do not think the appellant can complain of the omission to give instructions on striking and wounding for it was to his benefit.

No self-defense instruction was given. We think that was proper. In the first place the defendant denied shooting the man. Where the only issue is as to whether the defendant did the killing with which he is charged, an instruction on self-defense is not proper. Toliver v. Com., 104 Ky. 760, 47 S. W. 1082, 20 Ky. Law Rep. 906; Lawson v. Com., 152 Ky. 113, 153 S. W. 56; McEl-

waine v. Com., 154 Ky. 242, 157 S. W. 6; Hatfield v. Com., 248 Ky. 342, 58 S. W. 634; Fitch v. Com., 267 Ky. 646, 648, 103 S. W. 2d 98.

In the second place the defendant admitted that he was the immediate aggressor. The previous trouble was over. Merely because a few minutes before the deceased had cursed and threatened the defendant, both verbally and with a pistol, he was not legally justified in following up the man and striking him in the back of the head while he was wholly unaware of his assailant's presence. Burton and his brother had gone on toward the road after that and were helping to move the stalled automobile, while Delk went around the schoolhouse, armed himself with the club and pursued them. If there had been any evidence that the deceased's actions authorized a self-defense instruction, it would have had to be qualified by withdrawing that right by the usual provision that the defendant was not entitled to it if he was the aggressor. See Stanley on Instructions to Juries, Sec. 896, and notes. The deceased had abandoned, at least for the time being, any effort to harm the defendant, the difficulty was deliberately renewed by the sudden assault with a weapon by the defendant, and he was not entitled to the right of self-defense even though the deceased immediately turned and was coming toward him as the defendant claimed he was.

In Flowers v. Com., 278 Ky. 518, 128 S. W. 2d 961, a previous difficulty between Brown and Browning had ended. A few minutes later Brown went up behind Browning with a pistol, which was unknown to him until someone shouted "look out." He turned and there was a scuffle, during which Brown shot Browning. Flowers was prosecuted as an aider and abettor of Brown. We held the omission of a self-defense instruction to have been proper because since Brown was the aggressor in the affray in which the man was mortally wounded, he would not have been entitled to such an instruction, hence Flowers was not.

In Lawson v. Com., 152 Ky. 133, 153 S. W. 56, where no witness testified that the deceased was attempting any violence toward the defendant or had any weapon or had assumed any menacing attitude, and the defendant denied that he had taken any part in the difficulty

or had struck the deceased, it was held proper to refuse a self-defense instruction. See also Ferrell v. Com., 176 Ky. 330, 195 S. W. 495, and Reed v. Com., 140 Ky. 736, 131 S. W. 776, where the principle was applied in a reverse situation, the deceased having armed himself and assaulted the ·defendant a short time after a previous difficulty had terminated, it being held improper to qualify the self-defense instruction.

If Arvil Burton did the shooting in defense of his brother, as it would seem he was justified to do, and killed his brother instead, the conviction of Henry Delk ·with its severe penalty must rest upon his conscience. The jury accepted his story to the contrary and we perceive no prejudicial error in the trial.

Judgment affirmed.