# Mills v. Commonwealth.

June 3, 1947.

George K. Holbert, Judge.

J. Howard Holbert for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

James Mills, the appellant, was convicted of the voluntary manslaughter of Maxie Green. Punishment was fixed at 10 years in the penitentiary. Thereupon, Mills perfected this appeal.

Appellant now contends that the trial court's judgment should be reversed because the following prejudi-

cial errors were committed on this trial, viz: (1) certain verbal information in relation to a legal question was given by the court to a juror upon submission of the case; (2) appellant's motion for directed verdict was overruled; (3) an excessive verdict was rendered.

The Commonwealth proved that Maxie Green was fatally shot during the afternoon of February 21, 1946, just outside the front door of the home of James Mills in Elizabethtown. The shooting was done by means of a shotgun in the hands of Mills. In or about the house at the time of the shooting there were present, in addition to Green and Mills, Gladys Radcliffe, who was either the mistress or sweetheart of Green, and Price Mills, the brother of James Mills. Green and Gladys had gone to the Mills home to get a drink of whiskey. Green bought some drinks from Mills, played some tunes on the music box, engaged in the prevailing sociability. Then he left the house for a brief interval. Upon his return, he told Gladys that she "had been into something." She denied his charge and then Green "taken a smack" at her, according to her testimony. After the smack, Green bought another drink from Mills, announced his intention of going out to a show, requested Gladys to meet him at the show, departed a second time from the Mills home. After Green had gone, Mills said, according to Gladys, "I ought to shoot the son-of-a-bitch before he is liable to have me turned up for selling whiskey." After an interval of about 3 minutes, Green again returned to the Mills home. As he got near the door, Green and Mills were both heard to "mumble" something. Then Mills shot Green, who died the following morning. The investigating officers found no weapon of any kind upon or near the body of Green. The Chief of Police testified that Mills admitted the shooting and made the statement that he "couldn't take a chance with Maxie." The Commonwealth also proved that Mills and Green had, some months previously, been in a controversy in which Mills had cut and wounded Green. It was further proven that Mills had been twice convicted of felonies on previous occasions.

The appellant's own evidence tended to show that Green and Gladys had been into a considerable fight shortly before the shooting, resulting in the tearing of Gladys' dress, in the breaking of a baby's crib, in the

ordering of Green from the house by Mills, in a threat by Green that he would whip the two Mills brothers and Gladys if they would come out of the house. Appellant's evidence also indicated that Green, just before the shooting, was returning to the house in a menacing attitude, and that he had in his hands brick bats, which he was threatening to throw at James Mills at the time of the shooting. The substance of all this proof was contradicted by Gladys and by the Commonwealth's evidence that no brick bats were found near Green's body and by evidence that the interior of the Mills home did not show signs of previous struggle of the magnitude pictured by Mills.

1. Appellant's first contention is that the trial court committed reversible error by informing a juror at the bench and upon the juror's request, immediately after argument of counsel, that the addition of 1 day to a penal term would have no effect whatever on the parole eligibility of the person on trial. Appellant's attorney was present when this inquiry was made and answered. The court stated that the question could be answered if there was no objection. And none was made.

Appellant says that instructions in a felony case must be given in writing and cannot, over objections of the accused, be given orally, and that this becomes especially true when it turns out that the substantial rights of the accused have been prejudiced by the failure to give written instructions. He also says that instructions must be based on the pleadings and proof of the case and must contain the whole law of the case. We cannot dispute the soundness of these general principles.

In a death penalty case, we once held that it was reversible error for the trial judge to inform a jury, *in the face of an indicated objection,* as to pardon rights if a life sentence were imposed. See Houston v. Commonwealth, 270 Ky. 125, 109 S. W. 2d 45. But in that case, the record indicated that the man on trial had raised his voice to object. In addition, the jury's verdict, which was one of death penalty, rather clearly indicated that the giving of the requested information produced prejudicial results. That jury's verdict was one of extreme and maximum penalty. In the instant case, appellant made no objection whatever to the giving of the information requested. Besides, the verdict of

10 years for this offense, when it could have been 21 years, does not indicate that the giving of the requested information produced prejudicial results.

2. In the light of our above summary of the evidence produced by the Commonwealth, we hardly deem it necessary to further demonstrate that appellant was not entitled to a directed verdict. This was clearly a case for the jury. The Commonwealth's theory, supported by substantial, probative evidence, was that Mills killed Green at a time when Green was unarmed and at a time when Mills and his brother could no doubt have overpowered and subdued Green or could have called officers and caused his arrest. If this jury believed the testimony of Gladys Radcliffe, then appellant had no legal right to kill Green. And we have heretofore said that a trial jury has the right to accept the testimony of one witness to the exclusion of all other testimony or the right to accept or reject parts of the testimony on either or both sides. Davis v. Commonwealth, 270 Ky. 53, 109 S. W. 2d 2.

3. Appellant lastly contends that this verdict was and is excessive and that it shows on its face that it resulted from passion and prejudice. We cannot agree. This verdict might have been 21 years for the same offense. The record shows that this is the third time appellant has been convicted of a felony. Therefore, a life sentence might have been imposed. See KRS 431.190.

A verdict, which is within the limits prescribed by law and which does not impress the mind at first blush as being flagrantly out of proportion to the offense proven, is not excessive. Mitchell v. Commonwealth, 195 Ky. 819, 243 S. W. 1028.

This verdict is well within the statutory limits prescribed by law. In fact, it is hardly half of the possible maximum. And our minds were not impressed with any disproportionate flagrance in this verdict or with any obvious outrageousness of its outreach as we met it face to face on the pages of this record. Therefore, we must conclude that the verdict was not excessive.

Wherefore, having found no error committed upon this trial to the prejudice of the substantial rights of the appellant, the judgment of the trial court is now hereby affirmed.