Morris VARBLE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2001–SC–0230–MR.

Supreme Court of Kentucky.

Jan. 22, 2004.

Emily Holt, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Todd D. Ferguson, Assistant Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

Appellant, Morris W. Varble, was convicted in the Henderson Circuit Court of one count each of manufacturing methamphetamine, KRS 218A.1432(1)(b), and possession of a controlled substance in the first degree (methamphetamine), KRS 218A.1415. He was sentenced to consecutive prison terms of fifteen years and five years respectively. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), contending that (1) Count I of the indictment charging manufacturing methamphetamine was fatally defective; (2) the Commonwealth was improperly permitted to amend Count I of the indictment on the morning of trial; (3) he was not permitted to voir dire prospective jurors as to whether they could consider the full range of penalties for each charged offense; (4) he was denied his right to present the defense that someone else committed the offense; (5) there was insufficient evidence to convict him of manufacturing methamphetamine; (6) the jury was improperly instructed on the charge of manufacturing methamphetamine; and (7) KRS 218A.1432(1)(b) is unconstitutional. We agree that Appellant's voir dire was improperly limited and that the jury was improperly instructed on the charge of manufacturing methamphetamine, but disagree with Appellant's other contentions. Therefore, we reverse the conviction of manufacturing methamphetamine and the fifteen-year sentence imposed therefor and remand Count I of the indictment for a new trial. We affirm the conviction of possession of a controlled substance in the first degree but vacate the five-year sen-

tence imposed therefor and remand for a new sentencing phase trial.

On November 21, 1999, Appellant voluntarily permitted Detective Brian Babbs of the Kentucky State Police and Detective Jamie Duvall of the Henderson Police Department to enter his residence in Corydon, Kentucky. While in Appellant's kitchen, Duvall noticed a number of empty Sudafed blister packs in plain view in an open trash can. Sudafed is an over-the-counter antihistamine sold in tablet form. Its primary ingredient, pseudoephedrine, is a methamphetamine precursor. KRS 218A.1437(1). Appellant executed a written consent to a search of his residence, yard, and garage. During the search, the detectives discovered the following items identified at trial as chemicals, equipment, or evidence thereof, used in the manufacture, ingestion, or sale of methamphetamine:

Twenty-two empty Sudafed blister packs capable of containing over 500 tablets;

Two bottles of "mini-pseudos" (not further identified);

Three full bottles and one empty bottle of drain cleaner;

Five full cans and two empty cans of starting fluid;

Salt and two empty salt containers;

Six funnels;

Spoons;

One aquarium pump;

One can opener;

Mason jars and other glassware;

Lithium batteries and remains of batteries that had been broken open, including lithium strips;

Plastic baggies and baggie corners;

Two sets of weighing scales;

Two air tanks with hoses and a propane tank;

Four electric fans;

Tupperware or Pyrex dishes;

Aluminum foil;

One filter (not further identified);

One dust filter mask;

One air purifier respirator;

Plastic tubing with brass fittings;

Latex gloves;

One bag of chlorine;

Chlorine test kits;

One Spam can containing brown residue later determined to be methamphetamine;

One razor blade and straw; and

Brass fittings, some of which were discolored.

The search did not yield any coffee filters, which, as indicated at trial, are commonly used in the manufacturing process to separate soluble pseudoephedrine from the insoluble binding agents in Sudafed tablets. Nor did the officers find a discernible quantity of anhydrous ammonia (a methamphetamine precursor). However, Babbs testified that the odor of anhydrous ammonia was emanating from both air tanks. He also testified that exposure to anhydrous ammonia most likely caused the discoloration on the brass fittings.

The officers placed Appellant under arrest and searched him. The search produced a piece of aluminum foil containing a residue later determined to be methamphetamine, a newspaper clipping noting defense witness Ross Ferguson's unrelated arrest for manufacturing methamphetamine, and a sales receipt for the purchase of the plastic tubing found during the search of Appellant's property. Appellant's defense to the manufacturing charge was that the actual perpetrator was Damon McCormick. Appellant claimed in an audiotaped statement to Babbs after his arrest that McCormick owned all of the chemicals and equipment found on his

property except the "mini-pseudos" and had forced Appellant to permit him to manufacture methamphetamine on his property by threatening his life and that of his domestic companion, Hope Stevens.

## I. INDICTMENT.

■ Count I of the original indictment charged as follows:

That on or about November 12, 1999, in Henderson County, Kentucky, the Defendant, Morris W. Varble, committed the offense of Manufacturing Methamphetamine [sic] possessing the chemicals or equipment for the manufacturing of methamphetamine.

The indictment also correctly cited KRS 218A.1432 as the statute proscribing the charged offense.

■ Appellant claims the indictment was defective because it did not recite the statutory culpable mental states of "knowingly" and "with the intent to manufacture methamphetamine." We disagree. At least since the adoption of the present criminal rules, our courts have consistently held that an indictment is sufficient if it fairly informs the accused of the nature of the charged offense and is not misleading. *Thomas v. Commonwealth,* Ky., 931 S.W.2d 446, 449 (1996); *Wylie v. Commonwealth,* Ky., 556 S.W.2d 1, 2 (1977) (per curiam). Even under the old Criminal Code, an indictment for murder was not defective because it omitted "intentionally," the culpable mental state. *Delk v. Commonwealth,* 308 Ky. 579, 215 S.W.2d 109, 110 (1948) ("That would follow as a matter of course, for without intent it would not be murder."). *See also Abney v. Commonwealth,* Ky.App., 588 S.W.2d 714, 715–16 (1979) (indictment for burglary held not defective because it failed to recite "with intent to commit a crime").

## II. AMENDED INDICTMENT.

■ On the morning of the first day of trial, the Commonwealth was permitted to amend Count I of the indictment to read:

That on or about November 12, 1999, in Henderson County, Kentucky, the Defendant, Morris W. Varble, committed the offense of Manufacturing Methamphetamine *by* possessing chemicals or equipment for the manufacturing of methamphetamine; *or by conspiring with, aiding or attempting to aid Damon McCormick manufacture methamphetamine or possess the chemicals and/or equipment to manufacture methamphetamine.*

(Amendatory language emphasized.)

RCr 6.16 provides:

The court may permit an indictment … to be amended any time before verdict if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. If justice requires, however, the court shall grant the defendant a continuance when such an amendment is permitted.

This case does not require an inquiry into whether charging Appellant as an accomplice was an "additional offense" to charging him as the principal offender. *But see Wolbrecht v. Commonwealth,* Ky., 955 S.W.2d 533, 537 (1997) (reversible error to permit Commonwealth to amend indictment on fifth day of trial to charge defendant with acting in complicity with an unknown person). Here, the amendment of Count I did not prejudice Appellant's substantial rights because he was not convicted as an accomplice under the theory of the amended indictment but as the principal offender as charged in the original indictment. Furthermore, when the indictment was amended, defense counsel did not request a continuance and admitted that he had anticipated that the motion would be granted and had prepared his

defense accordingly. Remember, it was Appellant who first claimed that the chemicals and equipment found on Appellant's property belonged to McCormick.

### III. VOIR DIRE.

Appellant filed a motion in limine, KRE 103(d), to be allowed to voir dire prospective jurors as to whether they could consider the full range of penalties for each charged offense, i.e., ten to twenty years for manufacturing methamphetamine, KRS 218A.1432(2); KRS 532.060(2)(b), and one to five years for possession of a controlled substance in the first degree. KRS 218A.1415(2)(a); KRS 532.060(2)(d). The trial court overruled the motion and limited defense counsel to inquiring whether each juror "could consider the full range of penalties" without specifying the range.

In *Shields v. Commonwealth*, Ky., 812 S.W.2d 152 (1991), *overruled on other grounds by Lawson v. Commonwealth*, Ky., 53 S.W.3d 534, 544 (2001), we held that "[i]n order to be qualified to sit as a juror in a criminal case, a member of the venire must be able to consider any permissible punishment." *Id.* at 153. In *Lawson, supra,* we held that "[i]n all noncapital criminal cases where a party or the trial court wishes to voir dire the jury panel regarding its ability to consider the full range of penalties for each indicted offense, the questioner should define the penalty range in terms of the possible minimum and maximum sentences for each class of offense . . . ." *Id.* at 544.

Denying Appellant the right to inquire whether each juror could consider the full range of penalties for each charged offense erroneously denied him the right to determine whether each prospective juror was qualified to serve on the jury in his case. We cannot conclude that the error was harmless, as the jurors did not impose the minimum sentence allowable for either conviction. *Compare McCarthy v. Commonwealth*, Ky., 867 S.W.2d 469, 472 (1993) (imposition of minimum sentences rendered error harmless), *overruled on other grounds by Lawson, supra,* at 544. However, because the error pertains only to sentencing, it does not require a new guilt-phase trial under Count II for possession of a controlled substance in the first degree, but only that a new sentencing phase trial be held on that conviction. The error does not affect Count I of the indictment because, as explained *infra,* Appellant's conviction of manufacturing methamphetamine must be reversed because of an improper guilt phase instruction.

### IV. EXCLUSION OF WITNESS'S TESTIMONY AND STATEMENTS.

Appellant's only defense was that McCormick, not Appellant, was the person actually engaged in the manufacture of methamphetamine. He made this accusation in his audiotaped statement to Babbs, and the accusation was incorporated into the amended indictment. Thus, although McCormick was never formally charged with this offense, he was at least an accused suspect. Additionally, defense counsel admitted during an in-chambers hearing that McCormick was under indictment in an adjacent county on a charge of engaging in organized crime, KRS 506.120, premised upon his involvement in numerous methamphetamine-manufacturing operations.

Appellant attempted to call McCormick as a witness for the purpose of asking him whether he had visited Appellant's home and whether he had told Ross Ferguson that he intended to "set up" Appellant. During an in-chambers hearing, McCormick, on advice of personal counsel, ad-

vised the trial judge that he would invoke his Fifth Amendment privilege with respect to those questions. The trial judge then sustained the prosecutor's motion in limine to preclude Appellant from calling McCormick as a witness and also from eliciting testimony from any other witness regarding out-of-court statements made to them by McCormick.

The trial judge's ruling prohibiting Appellant from calling McCormick as a witness was obviously correct. *Clayton v. Commonwealth,* Ky., 786 S.W.2d 866, 868 (1990) (impermissible to call a witness knowing that the witness will invoke Fifth Amendment privilege against self-incrimination); *see also Combs v. Commonwealth,* Ky., 74 S.W.3d 738, 742 (2002) (same). However, the Fifth Amendment privilege against self-incrimination "protects a person only against being incriminated by his own compelled testimonial communications." *Doe v. United States,* 487 U.S. 201, 207, 108 S.Ct. 2341, 2345–46, 101 L.Ed.2d 184 (1988); *Fisher v. United States,* 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976). Thus, it does not protect against the reiteration of voluntary, out-of-court communications made by that person to others so long as the communications satisfy an exception to the hearsay rule.

Ferguson's proposed testimony was not preserved by an avowal, thus, we are unable to determine whether its exclusion constituted reversible error. KRE 103(a)(2); *Commonwealth v. Ferrell,* Ky., 17 S.W.3d 520 (2000). We address this issue only because it will necessarily recur upon retrial. Assuming relevancy, two hearsay exceptions could apply to McCormick's statement to Ferguson that he was going to "set up" Appellant. First, since the statement cast light on McCormick's future intent, not on a past event, it could be admissible as a statement of McCor-

mick's then-existing state of mind. KRE 803(3); *Crowe v. Commonwealth,* Ky., 38 S.W.3d 379, 383 (2001) (victim's statements that she intended to ask her husband for divorce admissible to prove that she did ask him for divorce, thus providing a motive for him to kill her). Second, McCormick's exemption from testifying because of his assertion of a privilege satisfied the "unavailability" requirement of KRE 804(a)(1) triggering the hearsay exception for statements against interest. KRE 804(b)(3). However, even though Ferguson's statement was partially corroborated by his claim that the propane tank found on Appellant's property belonged to McCormick, evidence that McCormick told Ferguson merely that he was going to "set up" Appellant was insufficient to satisfy the requirement that the statement "so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." KRE 804(b)(3). Generally, to qualify for admission under this exception, the statement must, in a "real and tangible way," subject the declarant to criminal liability. *United States v. Monaco,* 735 F.2d 1173, 1176 (9th Cir.1984). It is insufficient that it "possibly could" or "maybe might" lead to criminal liability. *United States v. Butler,* 71 F.3d 243, 253 (7th Cir.1995). McCormick's statement was too ambiguous to support a conclusion that he intended to "plant" chemicals or equipment necessary to manufacture methamphetamine on Appellant's property. Moreover, Appellant did not claim that McCormick "planted" the chemicals or equipment on his property but that he forced Appellant to keep them there.

## V. SUFFICIENCY OF THE EVIDENCE.

Appellant argues that there was insufficient evidence to convict him of man-

ufacturing methamphetamine under KRS 218A.1432(1)(b), which provides that a person is guilty of manufacturing methamphetamine "when he knowingly and unlawfully ... [p]ossesses the chemicals or equipment for the manufacture of methamphetamine with the intent to manufacture methamphetamine."

In *Kotila v. Commonwealth,* Ky., 114 S.W.3d 226 (2003), we held that the language "the chemicals or equipment" permits a conviction only if the defendant possesses "all of the chemicals or all of the equipment necessary to manufacture methamphetamine." *Id.* at 237. Appellant argues that because the search of his premises on November 12, 1999, did not reveal any quantity of anhydrous ammonia or any coffee filters, *Kotila* precluded his conviction. We disagree. The indictment charged Appellant with possessing the necessary chemicals or equipment "on or about November 12, 1999." Testimony that the odor of anhydrous ammonia was emanating from the two air tanks and that the discoloration of the brass fittings was likely caused by exposure to anhydrous ammonia was circumstantial evidence that Appellant had, in fact, possessed anhydrous ammonia in the recent past. *United States v. Morrison,* 207 F.3d 962, 966 (7th Cir.2000) (odor of anhydrous ammonia emanating from cooler found in defendant's residence was circumstantial evidence that defendant had used anhydrous ammonia to manufacture methamphetamine). Appellant's argument is akin to claiming that his possession of twenty-two Sudafed blister packs would not support his conviction because the blister packs were empty. He was found in possession of all of the other chemicals necessary to manufacture methamphetamine, and it was for the jury to decide whether he possessed those same chemicals at the same time that he possessed the anhydrous am-

monia (and the Sudafed). The requirement is that the chemicals or equipment be possessed simultaneously, not that they be possessed at the time of the arrest. In a felony case, the failure to prove the specific date of the offense is of no consequence unless time is a material element of the offense. *Stringer v. Commonwealth,* Ky., 956 S.W.2d 883, 885–86 (1997); *Peyton v. Commonwealth,* 288 Ky. 601, 157 S.W.2d 106, 108 (1941) (indictment charged offense was committed in 1939 whereas proof at trial was that it occurred in 1936).

As for the coffee filters, there was no testimony that *only* coffee filters can be used to separate the soluble pseudoephedrine from the insoluble binding agents in Sudafed tablets. In *Kotila,* cotton balls were used as the straining device. *Kotila, supra,* at 236. Here, the evidence found during the search of Appellant's residence includes a filter of an unspecified nature and a dust filter mask, both of which presumably could act as a strainer to separate a liquid from a solid. The statute does not require that the equipment was actually used to manufacture methamphetamine but only that it could be so used. We assume that this evidence will be clarified upon retrial. On the present status of the evidence, however, Appellant was not entitled to a directed verdict of acquittal on this issue. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186, 187 (1991).

Nor was the evidence insufficient to prove intent. Appellant did not deny that his garage was a methamphetamine laboratory. He only denied that it was so used by him. Additionally, the evidence permitted an inference that Appellant may have had a motive to manufacture methamphetamine for use by himself and Stevens, his domestic companion. *See Adkins v. Commonwealth,* Ky., 96 S.W.3d 779, 793 (2003) (("Evidence of a drug habit, along with evidence of insufficient funds to sup-

port that habit, is relevant to show a motive to commit a crime in order to gain money to buy drugs.") (Citations omitted.)); *United States v. Cunningham*, 103 F.3d 553, 557 (7th Cir.1996) (evidence of nurse's Demerol addiction admissible to show motive to tamper with Demerol-filled syringes); *State v. Kealoha*, 95 Hawai'i 365, 22 P.3d 1012, 1027 (App.2000) ("Evidence that Defendant sold methamphetamine to finance her cocaine use is probative of whether Defendant had a motive to manufacture methamphetamine and her intent to do so."). There was evidence that Stevens had previously used methamphetamine and pled guilty to facilitating its manufacture in another case not involving Appellant. Also, the presence of methamphetamine on Appellant's person was circumstantial evidence of his own methamphetamine use. Thus, there was evidence of both motive and opportunity from which a jury could reasonably imply intent.

## VI. METHAMPHETAMINE INSTRUCTION.

 The jury instruction under which Appellant was convicted of manufacturing methamphetamine stated:

### Instruction No. 1

You will find the Defendant, Morris W. Varble, guilty of Manufacturing Methamphetamine under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt that in this county, on or about November 12, 1999, he possessed *any of the following:* "liquid fire" (sulfuric acid) starting fluid (ether); salt; a funnel; spoons; an aquarium pump; can opener; pseudoephedrine or ephedrine pills; batteries, or parts thereof; scales; "spam" container; filter mask; respirator filter; "super shock it"; latex gloves; test kits; pipe fittings; tubes; hoses; tupperware containers; aluminum foil; baggies; baggie corners; air tank; a propane tank; and/or butane or propane fuel; mason jars; plastic bottles; *with the intent to manufacture methamphetamine.*

(Emphasis added.)

This instruction differed from the instruction that required reversal in *Kotila, supra*, at 242, in that it permitted the jury to convict Appellant of manufacturing methamphetamine if he possessed *any, i.e.,* one or more, of the listed items with the intent to manufacture methamphetamine. The instruction in *Kotila* predicated conviction upon the defendant possessing *all* of the listed items with the intent to manufacture methamphetamine but did not permit the jury to determine whether the items that were listed constituted all of the chemicals or all of the equipment necessary to manufacture methamphetamine. *Id.* at 243, 22 P.3d 1012. The instruction given in this case was, in fact, an instruction on the lesser offense of possession of drug paraphernalia. KRS 218A.500(1), (3).[1] Because Appellant was convicted of manufacturing methamphetamine under an instruction on possession of drug paraphernalia, his conviction of manufacturing methamphetamine must be reversed for a new trial.

## VII. CONSTITUTIONALITY OF KRS 218A.1432(1)(b).

### A. Vagueness.

As in *Kotila, supra*, Appellant claims that KRS 218A.1432(1)(b) is void for vagueness. *Kotila* held otherwise, *id.* at

---

1. Appellant did not request an instruction on possession of drug paraphernalia as a lesser included offense. He did, however, request and receive an instruction on the lesser included offense of criminal facilitation. KRS 506.080.

248–49, and our views in that regard have not changed.

## B. Overbreadth.

Appellant also challenges the statute for "overbreadth." However, the constitutional prohibition against "overbreadth" applies only to restrictions on First Amendment freedoms "because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression," thus creating a "chilling effect upon the exercise of First Amendment rights." *Martin v. Commonwealth,* Ky., 96 S.W.3d 38, 50 (2003) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973), and *Dombrowski v. Pfister,* 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965)). Obviously, restrictions on the possession of chemicals and equipment necessary to manufacture methamphetamine do not implicate First Amendment rights. *Kotila, supra,* at 248. Thus, the only issue is whether the statute is unconstitutional "as applied" to Appellant, generally implicating only the "void for vagueness" doctrine, *supra,* which as noted above, does not invalidate KRS 218A. 1432(1)(b).

## C. Cruel Punishment.

Appellant's final constitutional argument is that KRS 218A. 1432(1)(b) violates the proscription against cruel punishment contained in the Eighth Amendment to the United States Constitution and section 17 of the Kentucky Constitution. He premises this argument upon his assumption (made prior to the rendition of *Kotila, supra* ) that a penalty of ten to twenty years could be imposed for possession of any chemical or item of equipment used to manufacture methamphetamine. Of course, *Kotila* eliminated that assumption by construing the statute to require that a conviction be predicated upon possession of all of the chemicals or all of the equipment necessary to manufacture methamphetamine. *Id.* at 237.

" 'Cruel punishment' can relate to the severity in the amount or duration of the punishment, but if the punishment is within the maximum prescribed by the statute violated, courts generally will not disturb the sentence." *Riley v. Commonwealth,* Ky., 120 S.W.3d 622, 633 (2003) (citing *Weber v. Commonwealth,* 303 Ky. 56, 196 S.W.2d 465, 469–70 (1946)); *Monson v. Commonwealth,* Ky., 294 S.W.2d 78, 80 (1956), *overruled on other grounds by Owens v. Commonwealth,* Ky., 487 S.W.2d 897, 900 (1972); *Mills v. Commonwealth,* 305 Ky. 44, 202 S.W.2d 1005, 1007–08 (1947); *McElwain v. Commonwealth,* 289 Ky. 446, 159 S.W.2d 11, 12 (1942); *Bradley v. Commonwealth,* 288 Ky. 416, 156 S.W.2d 469, 471 (1941).

As in *Riley, supra,* Appellant makes a general claim that his sentence is disproportionate to the nature of his offense. *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). A proportionality analysis of a claim of cruel punishment requires consideration of three factors: (1) the gravity of the offense and harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 290–92, 103 S.Ct. at 3010–11; *see also Brown v. Commonwealth,* Ky., 818 S.W.2d 600, 600–01 (1991).

As for the first factor enumerated in *Solem,* we do not regard a maximum penalty of twenty years as cruel punishment for establishing what amounts to a laboratory designed for the manufacture of an illegal and addictive drug. It is immaterial to this analysis that the maximum penalty

for manufacturing other controlled substances is only ten years. KRS 218A.1412. Appellant's argument is that the statute constitutes cruel punishment, not that it violates the Equal Protection Clause.

The second and third factors in *Solem* require an individualized comparison with sentences imposed against others for the same offense. Our reversal of Appellant's conviction of manufacturing methamphetamine vacates his sentence for that conviction and, thus, obviates any present need for such a comparison.

Accordingly, Appellant's conviction and sentence for manufacturing methamphetamine are reversed and remanded to the Henderson Circuit Court for a new trial; and Appellant's conviction of possession of a controlled substance in the first degree is affirmed but the sentence imposed therefor is vacated and remanded to the Henderson Circuit Court for a new sentencing phase trial.

JOHNSTONE, KELLER, and STUMBO, JJ., concur.

LAMBERT, C.J., concurs by separate opinion, with GRAVES and WINTERSHEIMER, JJ., joining that concurring opinion.

Concurring opinion by Chief Justice LAMBERT.

I concur with the result achieved by the majority in this case, but write separately to highlight what I believe to be a desirable modification of the holding of *Kotila v. Commonwealth.*[1] In *Kotila,* the majority held that the conviction must be reversed because the defendant did not possess "*all* of the chemicals or *all* of the

equipment necessary to manufacture methamphetamine."[2] Such a statement would normally compel the conclusion that the failure to possess the necessary chemical anhydrous ammonia would preclude the conviction. But in this case, the majority has held that "the odor of anhydrous ammonia"[3] is sufficient circumstantial evidence to prove that at some point in time Appellant possessed anhydrous ammonia. Thus, in future prosecutions it will not be necessary to prove actual possession of anhydrous ammonia, but merely former possession based on proof of odor.

Similarly in this case, there was no evidence of coffee filters or another commonly used filtration device. The majority addresses this fact by presuming that a "filter of an unspecified nature and a dust filter mask"[4] could be used as the necessary filtration device. The foregoing represents a significant departure from the bright line rule announced in *Kotila.*

I wrote a dissenting opinion in *Kotila* expressing the view that the statute need not have been interpreted as it was and that the burden on the prosecution had been unnecessarily elevated. While I still hold that view, the instant case represents a moderation of what I believe to be undesirable aspects of *Kotila.*

GRAVES and WINTERSHEIMER, JJ., join this concurring opinion.

1. Ky., 114 S.W.3d 226 (2003).

2. *Id.* at 240–41 (emphasis in original).

3. *Varble v. Commonwealth,* Ky., 125 S.W.3d 246, 254 (majority opinion).

4. *Maj. op.* at 254.