MODIFIED: MARCH 18, 2010
RENDERED: MARCH 19, 2009
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2007-SC-000127-DG

DATE 3/18/10 Kelly Klabend.c.

COMMONWEALTH OF KENTUCKY                                    APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                           CASE NO. 2004-CA-001850-MR
BULLITT CIRCUIT COURT NO. 02-CR-00201

KEVIN T. MCCOMBS                                            APPELLEE

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

## REVERSING IN PART AND AFFIRMING IN PART

Appellee, Kevin T. McCombs, and his wife, Lisa, were divorced in September, 2002. Shortly thereafter, McCombs assaulted Lisa's son, Curtis Carney, and a domestic violence order was issued preventing any contact between Curtis and McCombs. The protective order further prevented McCombs from entering Lisa's house.

Though McCombs had sought reconciliation, Lisa informed him in December of 2002 that the divorce was permanent and no reconciliation was possible. Later that evening, McCombs went to Lisa's house, intoxicated. He broke into the garage in order to gain entry into the home through a door leading into the kitchen. He also admitted at trial that he cut the outside phone line for the express purpose of disabling the home's alarm system.

Krystal Carney, Lisa's daughter, testified that McCombs kicked the garage door open, which struck her in the face. She noticed he had a crowbar in his hand, and he ordered her to be quiet. She ran into her brother's room for help. McCombs followed and began beating Curtis with the crowbar. Krystal fled the room and alerted her mother that McCombs was in the house. She then found her sister, and both girls ran outside to a neighbor's house.

Curtis's and Lisa's testimony corroborated this version of events. Curtis further testified that McCombs hit him multiple times with the crowbar before Lisa began striking McCombs with a fire extinguisher. Realizing that McCombs was unfazed by the blow, she retrieved a knife from the kitchen and stabbed him. At this point, Curtis was able to escape the house and flag down a passing motorist. After being stabbed, McCombs calmed down somewhat. Lisa, a registered nurse, attempted to treat McCombs's wounds, but he refused. She then called police.

McCombs's version of events differed somewhat. Though admitting he cut the phone line to the house, he claimed that he was in the garage retrieving personal items when Krystal invited him into the home. He further claimed that a quarrel ensued between him and Curtis which developed into a physical altercation, but that he did not remember who threw the first punch. He denied ever using a crowbar. McCombs acknowledged that his presence in the home was in violation of the protective order.

A Bullitt County jury found McCombs guilty of first-degree burglary, fourth-degree assault, and violation of a protective order. He was sentenced to fifteen years, one year, and six months, respectively, to be served concurrently.

The Court of Appeals affirmed the conviction of violation of a protective order, but reversed the burglary and assault convictions, determining that they constituted double jeopardy. The Court of Appeals further held that the trial court erred when it determined, as a matter of law, that the crowbar was both a deadly weapon and a dangerous instrument. The Commonwealth appealed the decision to this Court and discretionary review was granted.

The thrust of McCombs's argument to the Court of Appeals, which the Commonwealth challenges herein, is that the jury instructions were erroneous. McCombs was convicted of first-degree burglary pursuant to the following jury instruction:

> That in this county on or about the 4th day of December 2002 and before the finding of the Indictment herein, he entered or remained unlawfully in a building owned by Lisa Presley without the permission of Lisa Presley or any other person authorized to give such permission; AND
> That in doing so, he knew he did not have such permission; AND
> That he did so with the intention of committing a crime therein; AND
> That when in effecting entry or while in the building or in immediate flight there from [sic], he:
>
> (1) Used or threatened the use of a "crow bar" [sic] against Curtis Carney; OR
> (2) Was armed with a "crow bar" [sic]; OR
> (3) Caused physical injury to Curtis Carney.

McCombs was convicted of fourth-degree assault pursuant to the following jury instruction:

> That in this county on or about the 4th day of December 2002 and within twelve (12) months before the finding of the Indictment herein, he caused physical injury to Curtis Carney; AND
> That in so doing:
>
> (1) The Defendant was acting intentionally; OR
> (2) The Defendant was acting wantonly; OR
> (3) The Defendant was acting recklessly when he struck Curtis Carney (if he did so) with the "crow bar." [sic]

3

According to McCombs, the trial court erred in determining, as a matter of law, that the crowbar constituted a deadly weapon. Further, McCombs claims the problem was compounded by the fact that the instructions allowed a finding of guilt under multiple theories of first-degree burglary and fourth-degree assault. The Court of Appeals agreed that if the burglary conviction was reached under the "physical injury to Curtis Carney" element, double jeopardy would bar the conviction. The Court of Appeals reasoned that in such circumstances, the fourth-degree assault did not require proof of an additional fact than the burglary conviction; in other words, both could not be based on the injury to Curtis. Of course, this reasoning implicitly rests on the conclusion that the physical injury requirement of burglary requires a finding of an intentional, wanton, or reckless mental state.

We turn first to the Court of Appeals' determination that McCombs's convictions for first-degree burglary and fourth-degree assault constitute double jeopardy. Both the Fifth Amendment of the United States Constitution and Section 13 of the Kentucky Constitution protect a criminal defendant from being punished twice for the same offense. Principles of double jeopardy do not, however, prevent a person from being charged with multiple offenses arising from the same course of conduct. "Double jeopardy does not occur when a person is charged with two crimes arising from the same course of conduct, as long as each statute 'requires proof of an additional fact which the other does not.'" *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky. 1996),

quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See also* KRS 505.020 (codifying *Blockburger* test).

Thus, we apply the *Blockburger* test to KRS 511.020 (first-degree burglary) and KRS 508.030 (fourth-degree assault). KRS 511.020 states, in pertinent part:

(1) A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

    (a) Is armed with explosives or a deadly weapon; or
    (b) Causes physical injury to any person who is not a participant in the crime; or
    (c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

KRS 508.030 states, in pertinent part:

(1) A person is guilty of assault in the fourth degree when:

    (a) He intentionally or wantonly causes physical injury to another person; or
    (b) With recklessness he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.

When a defendant is convicted of first-degree burglary under the "armed with explosives" theory or the "dangerous instrument" theory, and is convicted of fourth-degree assault, there is clearly no double jeopardy violation. The physical injury required for assault is not required for the burglary conviction, while the unlawful entry requirement for burglary distinguishes it from assault. The issue becomes more complicated when the first-degree burglary conviction rests on a finding that physical injury was inflicted on a non-participant in the crime.

5

We addressed this issue in *Butts v. Commonwealth*, 953 S.W.2d 943 (Ky. 1997), where Butts committed an assault which resulted in physical injury during the course of a burglary. He was convicted of fourth-degree assault and first-degree burglary. Looking to *O'Hara v. Commonwealth*, 781 S.W.2d 514 (Ky. 1989), in which an assault was not permitted to form the basis of both an assault conviction and a robbery conviction; we found a double jeopardy violation in *Butts*. Focusing on the specific facts alleged in the indictment, we based this conclusion on the fact that the physical injury element which constituted the assault was the same physical injury alleged and proven as an element of the burglary.

Upon careful reconsideration, we believe *Butts* was incorrectly decided. The physical injury element of fourth-degree assault and the physical injury element of first-degree burglary are not one and the same. The assault statute requires a finding that the injury was inflicted with an intentional, wanton, or reckless mental state. The burglary statute requires no such finding; it merely states that the offender "causes physical injury" to a non-participant. Under the burglary statute, the injury could be accidental.

Nonetheless, McCombs argues that the physical injury element of burglary has an implied mental state. He also urges that when the same injury *in fact* forms the basis of both convictions, the culpable mental state will necessarily be the same. Stated otherwise, if the jury believed McCombs acted intentionally with respect to the assault on Curtis, it necessarily believed he acted intentionally with respect to the physical injury underlying the burglary charge. Of course, our focus is directed towards the statutory elements of the

6

offenses, as "[a]n overlap of proof does not necessarily establish a double jeopardy violation." *Smith v. Commonwealth*, 905 S.W.2d 865, 867 (Ky. 1995).

We have previously expressed our disagreement with this position: "KRS 511.020(1)(b) requires no culpable mental state to prove the 'physical injury' aggravator, and a defendant may be found guilty of burglary first degree upon the physical injury of any nonparticipant if the injury is casually connected, pursuant to 501.060, to his conduct." *Grundy v. Commonwealth*, 25 S.W.3d 76, 87 n.36 (Ky. 2000). Furthermore, the plain language of the statute belies any contention that the physical injury must be committed with a specific mental state. Rather, we believe it is clearly the intent of the legislature that the basic crime of burglary – that is, the knowing and unlawful entry into a dwelling – be elevated when physical injury results, whether that injury was intended or not. *See also Polk v. Commonwealth*, 679 S.W.2d 231, 234 (Ky. 1984) (finding no double jeopardy where defendant was convicted of first-degree assault and first-degree burglary, because assault conviction required additional finding that physical injury was both intentional and serious).

In this case, we have considered "whether a single course of conduct has resulted in a violation of two distinct statutes and, if so, whether each statute requires proof of an additional fact which the other does not." *Clark v. Commonwealth*, 267 S.W.3d 668, 675 (Ky. 2008). Here, fourth-degree assault requires a specific finding of an intentional, wanton, or reckless mental state. The physical injury element of first-degree burglary does not require such a finding and, therefore, McCombs's convictions for both offenses do not violate

principles of double jeopardy. To the extent that this holding conflicts with *Butts v. Commonwealth*, that case is hereby overruled.

The Court of Appeals also determined that the trial court erred in determining, as a matter of law, that the crowbar used by McCombs was both a "deadly weapon" and a "dangerous instrument." As noted above, the trial court inserted the term "crowbar" in the jury instructions where the terms "deadly weapon" and "dangerous instrument" are used by the first-degree burglary and fourth-degree assault statutes.

We first address the trial court's determination that the crowbar was a deadly weapon. At the time of trial in this case, the question of whether an instrument is a deadly weapon was a matter of law to be determined by the trial court pursuant to *Hicks v. Commonwealth*, 550 S.W.2d 480, 481 (Ky. 1977). Since then, we overruled Hicks and stated that the determination is a mixed question of law and fact properly left to the jury. *Thacker v. Commonwealth*, 194 S.W.3d 287, 290-91 (Ky. 2006). Therefore, although for different reasons, we agree with the Court of Appeals that the trial court erred by not submitting this issue to the jury.

Any error in jury instructions is presumed to be prejudicial. *Harp v. Commonwealth*, 266 S.W.3d 813, 818 (Ky. 2008). Nonetheless, this presumption can be successfully rebutted upon a showing that the error was harmless. Id. An erroneous jury instruction that omits an essential element of the offense is subject to the harmless error analysis elucidated in *Chapman v. California. Neder v. United States*, 527 U.S. 1, 9 (1999). "That test . . . is whether it appears 'beyond a reasonable doubt that the error complained of did

8

not contribute to the verdict obtained.'" *Neder*, 527 U.S. at 15, <u>quoting</u> *Chapman v. California*, 386 U.S. 18, 24 (1967). <u>See</u> <u>also</u> <u>Harp</u>, 266 S.W.3d at 818 (noting that presumption of prejudice can be rebutted where error in jury instructions did not "affect" the verdict or judgment). Stated otherwise in *Neder:* "If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error . . . it should not find the error harmless." 527 U.S. at 19 (applying *Chapman* principles of harmless error where an element of the offense has been omitted from the jury's consideration).

We have thoroughly reviewed the record in this case and conclude that the jury verdict would have been the same if the instructions had used the term "deadly weapon" rather than "crowbar." A "deadly weapon" includes "a billy, nightstick or club." KRS 500.080(4)(d). A club is "a heavy [usually] tapering staff [especially] of wood wielded as a weapon." *Merriam-Webster's Collegiate Dictionary*, 217 (10th ed. 2002). A billyclub or nightstick is a police officer's club, made of steel or wood. *Id.* A crowbar is a solid iron or steel bar with a wedged end, commonly used as a pry or lever. *Id.* We believe that a crowbar is very similar to a nightstick or billyclub, particularly when wielded as a weapon. In this case, there was substantial evidence that McCombs used the crowbar as a metal club in his attack on Curtis. Furthermore, there was no evidence that the crowbar was anything other than a standard, metal club with a tapered end. For these reasons, we believe beyond a reasonable doubt the jury would have reached the conclusion that the crowbar was a deadly weapon

and, therefore, the error did not affect the verdict. The error in the instructions was harmless.

The Court of Appeals further held that the trial court erred by determining, as a matter of law, that the crowbar was a dangerous instrument. Ordinarily, the question of whether an object is a "dangerous instrument" is a jury determination, unless "it is undisputed from the evidence that the instrument employed on the occasion in question is one [capable of causing death or physical injury] and that *it was in fact* used or attempted or threatened to be used in such a manner[.]" *Commonwealth v. Potts*, 884 S.W.2d 654, 656 (Ky. 1994) (emphasis added). Because McCombs denied ever using the crowbar against Curtis, we agree that the issue should have been submitted to the jury. Again, however, we believe the error is harmless.

A "dangerous instrument" is "any instrument . . . article, or substance which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or serious physical injury[.]" KRS 500.080(3). Again, the crowbar used in this case was the typical solid metal club with a tapered end. A reasonable juror would readily conclude that such an instrument, when swung by an adult male, is readily capable of causing serious physical injury and even death. We are easily convinced beyond a reasonable doubt that the jury would have reached the same verdict, finding the crowbar to be a dangerous instrument, even if the issue had properly been included in the instructions. Any error did not affect the verdict and, therefore, was harmless.

10

We distinguish this case from the recent decisions in *Carver v. Commonwealth*, ___ S.W.3d ___ (Ky. 2010) and *Sanders v. Commonwealth*, ___ S.W.3d ___ (Ky. 2010), where we reversed persistent felony offender convictions because of issues relating to the jury instructions. In *Carver*, the jury instruction resulted in an improper conviction for first-degree persistent felony offender because a misdemeanor conviction served as one of the underlying prior offenses. In *Sanders*, the jury instruction allowed for the crime of possession of drug paraphernalia ( KRS 218A.500) to be enhanced to a first-degree persistent felony offender conviction, a result expressly forbidden by KRS 532.080. In both *Carver* and *Sanders* there was sufficient evidence in the record for a properly instructed jury to convict either defendant on the charge of being a persistent felony offender. However, reversal was required pursuant to the rationale used in *Varble v. Commonwealth*, 125 S.W.3d 246 (Ky. 2004).

In *Varble*, we reversed a conviction for manufacturing methamphetamine because the jury had actually been instructed on the lesser offense of possession of drug paraphernalia. *Id.* at 255. Thus, in *Carver* and *Sanders* reversal was necessary because the juries in those cases effectively found the defendant guilty under a jury instruction that on its face, constituted no crime. The applicability of *Carver* and *Sanders* is therefore limited to those situations where the jury instructions lead the jury to convict the defendant of a crime, but the elements contained in the jury instructions actually establish a different, uncharged crime or no crime at all. Our ruling in this matter follows a different line of cases where the juries are given instructions that are consistent with the charged crime, but where error has occurred regarding one

11

of the elements of the crime. *See Wright v. Commonwealth,* 239 S.W.3d 63 (Ky. 2007); *Thacker,* 194 S.W.3d at 287; *Potts,* 884 S.W.2d at 656. For these reversal is not mandatory, and a harmless error standard may be applied if the error is preserved. *Neder,* 527 U.S. at 15.

For the reasons stated herein, that portion of the opinion of the Court of Appeals holding that McCombs's convictions for burglary in the first degree and assault in the fourth degree was double jeopardy is reversed. Further, that portion of the opinion of the Court of Appeals upholding McCombs's conviction for violation of a protective order is affirmed. The trial order and judgment of the Bullitt Circuit Court is hereby reinstated.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Jack Conway
Attorney General

Jeffrey Allan Cross
Assistant Attorney General
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Eric Griffin Farris
Lee Renee Remington
BUCKMAN, FARRIS & RAKES, PSC
193 South Buckman Street
P. O. Box 460
Shepherdsville, KY 40165

# Supreme Court of Kentucky

2007-SC-000127-DG

COMMONWEALTH OF KENTUCKY                                    APPELLANT

V.

ON APPEAL FROM BULLITT CIRCUIT COURT
HONORABLE THOMAS WALLER, JUDGE
NO. 02-CR-00201

KEVIN T. MCCOMBS                                              APPELLEE

## ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION

The Appellant having filed a Petition for Rehearing of the Opinion of the Court by Justice Cunningham, rendered March 19, 2009; and the Court being otherwise fully and sufficiently advised;

The Court ORDERS that the Petition for Rehearing is DENIED. The Court, *sua sponte* modifies the Opinion of the Court by Justice Cunningham, rendered March 19, 2009, to reflect recent related developments in our case law. The attached opinion is SUBSTITUTED in lieu of the original. Said modification does not affect the holding.

All sitting. All concur.

ENTERED: March 18, 2010.

CHIEF JUSTICE